## T. L. Taylor et al. v. D. W. Doom et al.

Decided April 25, 1906.

**1.—Revised Statutes, Art. 1357, Construed—Mistake in Judgment.**

Under the provisions of the statute, a mistake or miscalculation in a judgment can be corrected at any time on application of either party after notice to the opposite party.

**2.—Execution—Not Necessary that Judgment Provide for Issuance of.**

It is not essentially necessary to the issuance of an execution that it be provided for in the judgment, and an execution can be issued under a judgment, although not provided for therein.

**3.—Dormant Judgment—Sale Under.**

A sale under a dormant judgment is only voidable, and can not be attacked in a collateral proceeding.

**4.—Limitation—Evidence of Occupancy.**

Evidence of occupancy considered and held too indefinite to establish title by limitation.

**5.—Agreement as to Common Source of Title—Effect of.**

In trespass to try title, an agreement that the father is the common source of title does not preclude the children from showing that the land was community property, and claiming through their mother.

**6.—Purchaser of Legal Title at Execution Sale—Equities—Burden of Proving.**

The purchaser of land at a legal and regular execution sale under judgment against the holder of the legal title, becomes vested with the legal title,

and the holder of an equity must prove that such purchaser was not a purchaser for value without notice.

Appeal from the District Court of Jasper County. Tried below before Hon. W. B. Powell.

W. W. Blake, for appellants.—The court erred in admitting in evidence a judgment of the District Court of Jasper County, Texas, rendered October 8, 1868, in cause No. 437, styled Bernart Weil v. Wm. Taylor, introduced by plaintiffs to support their title to the land in controversy, because the same purports to be a reformation of former judgment, rendered eighteen months prior, and after the court had lost jurisdiction of the matters in controversy, and adjudicated in said former judgment, and after a final and valid judicial determination of the same.

Because this judgment, in addition to an attempt to revise and reform a former valid judgment, purports also to be a revival of former judgment, and did not award or authorize an execution by virtue of which the land was sold, and was itself long dormant when execution issued on it and the same was void as a judgment for debt. Rev. Stats., arts. 1337, 2326a, 2338; Missouri P. Ry. Co. v. Haynes, 82 Texas, 448; Brewster v. Norfleet, 22 S. W. Rep., 226; Brownsville v. Basse, 43 Texas, 448; Rogers v. East Line Lumber Co., 11 Texas Civ. App., 110; Hedgecove v. Conner, 43 S. W. Rep., 322; McConkey v. Henderson, 24 Texas, 212; Stegal v. Huff, 54 Texas, 196; Northcraft v. Oliver, 74 Texas, 162.

If this judgment of October 8, 1868, ever had any force or effect for any purpose it was a judgment reviving the judgment of April 9, 1867. It is not an original suit but a continuation of the former one and would not support an execution. Bullock v. Ballew, 9 Texas, 498; Perkins v. Hume, 10 Texas, 50; Hopkins v. Howard, 12 Texas, 8; Bridges v. Samuelson, 73 Texas, 523; Fitzgerald v. Evans et al., 53 Texas, 461; Burns v. Skelton, 68 S. W. Rep., 527; Brown v. Harley, 2 Fla., 159; Owens v. Henry, 161 U. S., 642; Am. & Eng. Ency. Law, 1st ed., vol. 21, p. 870 top.

The court erred in admitting in evidence an entry on the execution docket of Jasper County, of the sheriff's return on the execution issued on the judgment of October 8, 1868, showing levy and sale of land in controversy by the sheriff to M. C. Moulton and D. W. Doom, because the said execution and sale thereunder was void, as being without authority of any court, and no valid judgment to support it. Because the officer fails to state definitely the authority under which he acted. The return fails to correctly style or number the cause in which the execution issued. Underwood v. Brown, 68 S. W. Rep., 206; Allison v. Brookshire, 38 Texas, 202; House v. Robertson, 89 Texas, 687.

One in the exclusive adverse possession of a tract of land for more than ten years claiming under a memorandum defining the boundaries, cultivating, using and enjoying the land, will hold to the limits described in the memorandum under which he claims. The actual visible notorious adverse possession of a small part of the land so occupied will carry with it constructive possession of the whole, unless such constructive possession is in some way broken by the possession of a portion of it by an adverse claimant. Pendleton v. McMains, 75 S. W. Rep., 349; Nativel v. Raymond et al., 59 S. W. Rep., 313; Porter v. Miller et ux, 76 Texas,

597; Price v. Eardley, 8 Texas Ct. Rep., 787; Pearson v. Boyd, 62 Texas, 544; Angell on Lim. (6th ed.), p. 410-412.

Where land of a defendant is seized and sold and the defendant in execution refuses to recognize said sale, but openly claims title in himself, and is not ousted by the purchaser, but is allowed to retain adverse possession for ten years, openly cultivating, using and enjoying the same, he is reinvested of title to the same land, and his deed from his vendor will serve to limit his boundaries. Hunter v. Hubbard, 26 Texas, 547; Southall v. Southall, 6 Texas Civ. App., 696; Angell on Limitations, sec. 174-178, sec. 472, 6th ed.; Chalfin v. Malone, 9 B. Mon. (Ky.), 496; Keaton v. Thomasson, 2 Swan. (Tenn.), 138; Burhans v. Van Zandt, 7 Barb. (N. Y.), 91; Kent v. Harcourt, 33 Barb. (N. Y.), 491; Cyc., vol. 1, p. 1040, note 8; p. 1041, notes 9 and 10, and p. 1055, notes 2 and 3; Cyc. Annual Annotations, p. 86, note 2; Milnes v. Van Gilder, 197 Pa., 347; Waldron v. Harvey, 54 W. Va., 608.

The court erred in his third conclusion of law (numbered 9), that the admission of common source of title in their ancestor estopped them from claiming the community interest of their deceased mother, who died before the sheriff's sale, seized of one-half the land in controversy.

The court erred in his fourth conclusion of law (numbered 10) that the burden was on defendant to prove notice to plaintiff of the community interest of their mother, because their title by descent is a legal title. Keys v. Mason, 44 Texas, 141; Stephens v. Hix, 38 Texas, 658; Edrington v. Butler, 33 S. W. Rep., 144.

*D. W. Doom* and *H. C. Howell,* for appellees.—That a dormant judgment can be revived at any time within ten years after its rendition, and a judgment can be amended after the expiration of the term at which it was rendered on notice to the party to be affected thereby, cited: Rev. Stats., 3361, 1356, 1357; Coffee v. Block, 50 Texas, 118; De Hymel v. Scottish-American Mortgage Co., 80 Texas, 495; Cowan v. Ross, 28 Texas, 228; Hickey v. Behrens, 75 Texas, 495; Russell v. Miller, 40 Texas, 495; Patton v. Collier, 90 Texas, 120.

A sale of land under an execution issued on a dormant judgment is not void and does not render such sale subject to collateral attack. Boggess v. Howard, 40 Texas, 158; Maverick v. Flores, 71 Texas, 110; Smith v. Perkins, 81 Texas, 152; Odum v. Menafee, 11 Texas Civ. App., 119; Meader v. Aringdale, 58 Texas, 450.

Where an original judgment was rendered for a specific sum as principal, and there was a failure on the part of the clerk to calculate the interest due on such principal sum, and subsequently a judgment was rendered in the same court between the same parties amending and reviving such original judgment, which was dormant, and directing the clerk to calculate the interest on such principal sum and include it in the judgment of revivor, which was accordingly done, it was immaterial that there was a failure to bring forward such principal sum and incorporate it in the judgment of revivor, as the same could be ascertained by reference to the former judgment, and an execution for the principal sum and the interest, or for either, or for any part thereof, which referred to the judgment of revivor as authority for its issuance was proper, and even if irregular, it was not such irregularity as the execution

debtor or his heirs could avail themselves of on collateral attack. Rev. Stats., art. 1356, 1357; Roberts v. Connellee, 71 Texas, 17, 18; Bludworth v. Poole, 21 Texas Civ. App., 551; Camp v. Gainer, 8 Texas, 372; Waller v. Huff, 9 Texas, 530; Taylor v. Harris, 21 Texas, 439; Fitzgerald v. Evans, 53 Texas, 461; Smith v. Chenault, 48 Texas, 455; Little v. Birdwell, 27 Texas, 689; Taylor v. Branham, 35 Fla., 297.

A judgment, execution and sheriff's sale can be collaterally attacked only when the court rendering the judgment was without jurisdiction of the person or subject matter of the suit, and where the court has such jurisdiction neither such judgment, execution or sale can be collaterally attacked so as to affect the rights of a purchaser thereunder, although such proceedings may be irregular or erroneous. Trueheart v. McMichael, 46 Texas, 227; Williams v. Ball, 52 Texas, 606 et seq; Treadway v. Eastburn, 57 Texas, 209; Odle v. Frost, 59 Texas, 686; Thorn v. Newsom, 64 Texas, 165; Martin v. Robinson, 67 Texas, 374; Reems v. Masterson, 80 Texas, 52; Ross v. Drouilhet, 9 Texas Ct. Rep., 81; Bordages v. Higgins, 1 Texas Civ. App., 50; Newman v. Mackay, 11 Texas Ct. Rep., 353; Hartford Fire Ins. Co. v. King, 7 Texas Ct. Rep., 183.

Where land is levied on and sold under valid judgment, execution and sale, it breaks the connection of the execution debtor with the sovereignty of the soil, and vests such title in the purchaser as the debtor had at the time of the levy and sale, however such title may have been acquired or held by him, and in case of reentry by him or his heirs thereafter, they do so as naked trespassers or disseizors without title or color of title. Wright v. Daily, 26 Texas, 731; Harris v. Hardeman, 27 Texas, 249; Long v. Brenneman, 59 Texas, 210; Spring v. Eisenach, 51 Texas, 435; Paxton v. Meyer, 67 Texas, 96; Voight v. Mackle, 71 Texas, 78; Blum v. Rogers, 71 Texas, 668; Bailey v. Laws, 3 Texas Civ. App., 535; Daugherty v. Yates, 13 Texas Civ. App., 650; Doom v. Taylor, 9 Texas Ct. Rep., 631.

Where plaintiffs establish a prima facie title to the land in controversy, and defendants, being naked trespassers or disseizors, fail to show adverse occupancy of any part of the tract under conditions and circumstances such as to fully meet the requirements of the statute, and such as to enable the court to render a judgment in their favor for a specific and definite part thereof, a judgment in favor of plaintiffs for the entire tract sued for is the only judgment that can be legally rendered. Giddings v. Fischer, 8 Texas Ct. Rep., 623; Titel v. Garland, 13 Texas Ct. Rep., 335.

Where plaintiffs became the purchasers for value of the legal title to the tract of land in controversy by sheriff's sale, and without notice of the existence of an equitable title in the heirs of the deceased wife of the execution debtor arising out of her community interest in the land, plaintiffs are bona fide purchasers, and will be protected as such, and where such equitable title is asserted by defendants, the heirs of such deceased wife, the burden is upon them to show affirmatively that plaintiffs, at the time of their purchase, had notice either actual or constructive of such title, and is not upon plaintiffs to show negatively that they did not have such notice. Rev. Stats., art. 2378; Hill v. Moore, 62 Texas, 615; Wren v. Peel, 64 Texas, 380; Pouncey v. May, 76 Texas, 565;

Patty v. Middleton, 82 Texas, 586; Saunders v. Isbell, 5 Texas Civ. App., 513.

FLY, ASSOCIATE JUSTICE.—This is an action of trespass to try title to 225 acres of land, instituted by appellees against appellants. Appellants answered by pleas of not guilty and limitation. The cause was tried by the court and resulted in a judgment in favor of appellees.

It was agreed that William Taylor was the common source. Appellees claimed the land through an execution sale made by virtue of a judgment in a case styled B. Weil v. Wm. Taylor, and appellants claimed the land as the heirs of William Taylor and their mother. The land was the community property of William Taylor and his first wife. While it is inferentially found by the court that appellant were the heirs of the first wife of William Taylor there is no proof of any but Z. W. Taylor being her heir. It appears from the statement of facts that it was admitted by both parties that William Taylor is the common source of title, and that appellants are the heirs and legal representatives of said William Taylor. We find that the title to the land was in appellees. Other facts are found in connection with the discussion of the assignments of error.

It appears that B. Weil obtained a judgment, on April 9, 1867, against William Taylor for $588.58, and costs, and that it became dormant by failure to issue execution within a year from its date. Suit was then brought by the plaintiff to revive the judgment and to correct the former judgment in a matter of interest and a judgment was obtained to that effect. The last judgment recited that the former one had been obtained, that it was rendered for an insufficient amount and that it had become dormant, and it revived the judgment and corrected the same. Under these circumstances, the cause being tried by the court, it does not appear how appellant could have been prejudiced by the admission in evidence of the first judgment. The recitals in the second judgment contained everything of importance in the first one.

If it should be held that the judgment of October 8, 1868, was void insofar as it sought to increase the amount of the former judgment, that would not invalidate that portion of it which revived the former judgment. The one part is separable from the other. But clearly under the provisions of article 1357, Revised Statutes, the mistake or miscalculation could be corrected at any time on application of either party, after the opposite party had been given notice of the application for such amendment. (Russell v. Miller, 40 Texas, 494; Chestnut v. Pollard, 77 Texas, 86.) The error was one that could be corrected from the record itself, and was a case peculiarly within the purview of the statute. It was a clerical error in the calculation of interest that was corrected. (Missouri Pac. Ry. v. Haynes, 82 Texas, 448; Whittaker v. Gee, 63 Texas, 435.) But as before stated if the attempt to amend was ineffectual, the revival of the former judgment was not affected thereby.

The original execution, under which the land in controversy was sold, was destroyed by fire and the court admitted in evidence an entry on the execution docket of the district and county clerk of Jasper County. That entry showed that the execution was issued October 3, 1872, for debt and costs, $514.21, and was returnable to November term, 1872.

There was also an entry of the sheriff's return showing that the execution had been levied on the land in controversy, that the proper advertisement had been made and that on the first Tuesday in November, 1872, the property had been sold to appellees for the sum of $135. This was followed by a statement of how the money was applied by the sheriff. Appellant objected to the entries because the execution and sale were void, as being without the authority of any court, because the return fails to correctly number or style the cause in which the execution was issued and because it was vague and uncertain. There is no merit whatever in these objections. The style of the case was given and it was sufficiently identified. No variance is shown by reason of the amount for which execution was issued being larger than the original amount of the judgment. It would very naturally be larger in 1872 than it was in 1868, as it had been bearing interest all the time.

It seems to be a contention that the execution having been issued by virtue of the judgment of 1868, and that judgment not authorizing an execution except under the judgment of 1867, the execution was necessarily void. The last judgment recited the amount of the first judgment, stated that there had been a miscalculation of the interest and then gave the correct amount of interest and additional costs, revived the former judgment and awarded executed "thereupon." It is not essentially necessary to the issuance of an execution that it be provided for in the judgment, and an execution could have been issued under the judgment of 1868 although it was not provided for therein. (Freeman, Judg., sec. 2; Roberts v. Connellee, 71 Texas, 11; Hartz v. Hausser, 14 Texas Ct. Rep., 141.)

It does not appear that any execution had been issued under the judgment until 1872, and if that be true, the judgment was dormant. However, a sale under a dormant judgment is not void but only voidable, and can only be attacked in a direct proceeding instituted for that purpose. It can not be attacked in a collateral proceeding. (Sydnor v. Roberts, 13 Texas, 598; Hancock v. Metz, 15 Texas, 205; Hawley v. Bullock, 29 Texas, 217; Boggess v. Howard, 40 Texas, 153; Laughter v. Seela, 59 Texas, 177; Maverick v. Flores, 71 Texas, 110.)

The evidence as to occupancy of any part of the land in controversy is too vague and uncertain to support a plea of limitations. It is not shown whether the parties who at different times occupied the house did so as tenants of appellants or not. Z. W. Taylor swore that a part of the old William Taylor farm which had been in cultivation for 30 or 35 years, was on the land in controversy, but the nearest he could come to fixing the number of acres was from 10 to 40 acres. He then swore that he did not know where the line of the land in controversy was, clearly showing that he knew nothing about whether any of the 225 acres in controversy was in the farm or not. He said the house was near a line made by Mr. Blake. The latter testified that he was a surveyor but did not find the line between the land in controversy and the 490 acres belonging to appellants. Evidently he knows nothing about the location of the line and yet from his calculations he testified that the house of W. D. Taylor was about twenty feet from the line. Z. W. Taylor also swore that he, as agent for Mrs. Trotti and Mrs. Jones, had, four or five years ago, sold some oak timber off the land in

suit. The foregoing is substantially what was sworn in support of the pleas of limitation. It is clearly insufficient to establish title by limitations. The house of W. D. Taylor, spoken of by the witness Blake, was built less than ten years prior to the institution of this suit.

. We can not agree with the trial judge in his ruling that appellants were precluded from showing that the land was the community property of their father and mother, on the ground that they were estopped from claiming through their mother by reason of their agreement that their father was the common source. The rule is well established that when an agreement is made as to a common source the defendant can not question the validity of any link in the chain of title between the common source and the sovereignty of the soil. (Pearson v. Flanagan, 52 Texas, 266; Glover v. Thomas, 75 Texas, 506; Evans v. Foster, 79 Texas, 48.) But it does not seem to us that it is an infringement of that rule to hold that appellants were authorized to show that though the legal title was in William Taylor, their father, that their mother had an equitable title to one-half of it. There was no attack upon the title of William Taylor, nor on any link between that title and the State. Appellants did not attempt to attack that title, they admitted it, but they had the right to show that although the legal title was in William Taylor, that it was community estate and one-half of the land belonged to his wife. As said in the case of Fox v. Brady, 1 Texas Civ. App., 590, "We can not perceive how the claim by appellees under this deed as a common source could be construed to be inconsistent with their claim that the property conveyed was community property." It is held that the question of common source is one of burden of proof, a rule of evidence and not of estoppel. (Howard v. Masterson, 77 Texas, 41; Rice v. St. Louis, A. & T. Ry., 87 Texas, 90.)

In the case last cited the court in discussing this question said: "Notwithstanding the proof of the insufficiency of his title under the common source, the defendant may still defeat the action by showing that there is a title superior to that of the person or persons under whom both claim, and that he is holder of that title; and even without showing that he holds such superior title, it may be that his defense ought to prevail, provided he prove affirmatively not merely that someone had the title anterior to that of common source, but also that such previous title never vested in the common source. . . . Since the plaintiff must prove his title in order to recover, it would seem that when he has shown title under the common source, that proof by defendant, however made, that the common grantor had no title ought to be a defense."

The trial court also held that the burden rested upon appellants to show that appellees were not purchasers for value without notice of their equitable title to their mother's community interest in the land and that having failed to make that proof appellees should recover, upon their proof of having purchased the legal title to the land at execution sale. The ruling was correct, for when appellees showed that they had bought the land at a regular and legal execution sale under a judgment against William Taylor, they had made out a *prima facie* case and it

then devolved upon appellants to prove the superiority of their title. (Simmons Hardware Co. v. Davis, 87 Texas, 146.)

William Taylor had the legal title to the land in him, and his wife only had an equity of one-half of the land. When the sale under execution took place the legal title to the whole of the land passed to appellees, and in order for appellants, the holders of the equities of the wife, to recover it devolved upon them to prove their equities. To do that it was necessary not only to prove that their mother was the owner of one-half of the land but that appellees were not purchasers for value without notice. McAlpine v. Burnett, 23 Texas, 650; Baldwin v. Root, 90 Texas, 546; Turner v. Cochran, 94 Texas, 480; Kimball v. Houston Oil Co., by this court not yet published.

The reason for the rule is thus given in McAlpine v. Burnett: "The principle is manifest, upon the mere statement of the proposition, for every complete legal title, *prima facie,* carries with it, and covers the equitable title. In any case it does not so include it, in fact, the party claiming the equitable title must aver and prove it." The rule is the same as prevails in the case of a junior purchaser, who must assume the burden of proof, because the legal title is in the prior purchaser. In this case the equitable title was neither averred or proved.

*Affirmed.*