Rosalie MARINO and Adam Gurski, Appellants,

v.

Carrie LOMBARDO, Appellee.

No. 4992.

Court of Civil Appeals of Texas.

Beaumont.

March 30, 1955.

Rehearing Denied April 20, 1955.

Jack M. Moore, Beaumont, John H. Benckenstein, Beaumont, for appellants.

W. G. Walley, Beaumont, for appellee.

750

ANDERSON, Justice.

Upon original submission of this appeal, the judgment of the trial court was reversed and the cause was remanded for a new trial. Reconsideration of the record led to the conclusion that, as contended by appellee in her motion for rehearing, the legal theory on which the reversal was predicated should probably not have been given application on the assignments of error contained in the motions for new trial that were filed by the parties in the trial court. Appellant Rosalie Marino was then ordered to rebrief the case. She did this, and has now brought forward in acceptable form a point which was not passed upon in our original opinion because of procedural questions attending it. We have therefore withdrawn our original opinion, and the following is substituted in lieu of it as the opinion of the court.

The suit is in trespass to try title to Lots 5 and 6 in Block 3 of the Flowers Addition to the city of Beaumont. It was originally instituted by Rosalie Marino against Carrie Lombardo and husband, Carmelo Lombardo, on February 28, 1952. The plaintiff later, on October 15, 1952, filed her first amended original petition, in which Carrie Lombardo alone was named as defendant. Carmelo Lombardo had died during the interim. Appellant Adam Gurski was brought into the suit by the defendant, Carrie Lombardo, by a so-called cross-action, the primary, if not the sole, purpose of which was to procure injunctive relief against certain alleged trespasses. The cross-petition was filed on April 8, 1953, and both the plaintiff, Rosalie Marino, and the said Adam Gurski were named in it as cross-defendants. On April 8, 1953, a temporary restraining order was granted on the cross-petition. Whether or not a temporary injunction was subsequently granted is not reflected of record. On May 2, 1953, the defendant, Carrie Lombardo, filed her first amended original answer to plaintiff's petition. Of the several defensive pleas interposed by her, we need note only her general denial and her plea of not guilty. By supplemental petition filed on May 8, 1953, the plaintiff entered a general denial and plea of not guilty to the defendant's amended answer, and also pleaded that she was an innocent purchaser for value, without notice of matters contained in said amended answer. Both Rosalie Marino and Adam Gurski interposed general denials and pleas of not guilty to the cross-petition of the defendant.

On a jury's special-issue verdict, judgment was rendered whereby it was ordered, adjudged and decreed: "that Plaintiff, Rosalie Marino, do have and recover of and from the Defendant, Carrie Lombardo, the title to an undivided one-half (½) interest in and to Lot Number six (6) of Block Number three (3) of the Flowers Addition to the City of Beaumont, Jefferson County, Texas, according to the map or plat of said addition of record in the office of the county clerk of Jefferson County, Texas; but, that with regard to all of the other rights, title and interests sought by said Plaintiff, Rosalie Marino, against Defendant, Carrie Lombardo, in this suit, Plaintiff shall take nothing"; and, "that Cross-Defendant, Adam Gurski, be, and he is hereby, restrained and enjoined permanently from removing or damaging any of the improvements, houses, dwelling places, sheds, clothes lines, or clothes poles situated in, over or upon said property, and further from molesting or harassing Defendant and Cross-Plaintiff, Carrie Lombardo, or interfering in any manner with her right of possession of said property or premises." From this judgment, both the plaintiff, Rosalie Marino, and the cross-defendant, Adam Gurski, have appealed.

The plaintiff, Rosalie Marino, relies on what she insists is the superior record title under a common source, she and the defendant, Carrie Lombardo, having agreed upon Carmelo Lombardo, Carrie's deceased husband, as the common source of the respective titles and rights asserted by them. Cross-defendant Gurski holds and relies on the title of the plaintiff, having acquired it during pendency of the suit, and in addition contends that a verdict should have been instructed and judgment should have been rendered in his favor because, as he maintains, the cross-action of the defendant, Carrie Lombardo, is in form of trespass to

try title, and said defendant failed to prove either title or right of possession in herself. He points out, in this connection, that he has at no time sought affirmative relief, but is a party to the suit only as a defendant in cross-action, and that he answered the cross-petition by plea of not guilty. He did not expressly enter into any agreements as to a common source of title.

The defendant, Carrie Lombardo, appears to rely primarily on her claim of homestead rights in the property in controversy. While no mention is made of it in her brief, we assume she also asserts whatever inherative rights her husband's death cast upon her. She also maintains that one of the deeds appearing in the plaintiff's chain of title is void, this being a deed from Carmelo Lombardo to Roy C. Lombardo, dated May 20, 1946. This contention is based upon the theory that, at the time the deed was made, the premises sought to be conveyed by it constituted a part of the homestead of the defendant and her husband, and the defendant neither signed nor acknowledged the deed.

The only special issues submitted to the jury pertained to defendant's claim of homestead rights. The jury found that on May 20, 1946, (the date of the deed which is claimed to be void) the land in controversy was a part of the homestead of Carmelo Lombardo and the defendant; and failed to find from a preponderance of the evidence either that Carmelo Lombardo abandoned the lots in controversy "for the purposes of a home" before May 20, 1946, or that before signing the deed dated May 20, 1946, he represented to Roy Lombardo (the grantee) that he never intended to use said lots as a home.

For the purpose of showing title in herself under the common source, the plaintiff, without objection having been made to their introduction, introduced in evidence three deeds. The first of these was a deed from Carmelo Lombardo to his son, Roy C. Lombardo, dated February 3, 1943. By it, for a recited consideration of $200 in cash—which, according to the evidence, was actually paid—the grantor conveyed to the grantee and undivided one-half interest in Lots 6 and 7 in Block 3 of the Flowers Addition. This deed contained, among others, the following provision: "I, the said Carmelo Lombardo, do hereby reserve unto myself my homestead rights in and to said property so long as I shall live and use same or any part thereof as my homestead. It is expressly understood and agreed that the improvements consisting of a one-story house in which I live is located on Lot 5 of Block 3 of said Flowers Addition to the City of Beaumont, and if for any reason we should be mistaken concerning the location of said home and said house should actually be located on either Lot No. 6, Lot No. 7, or both, in Block No. 3 of the Flowers Addition * * * then I hereby except and reserve unto myself said house and the same shall be considered as personal property and subject to removal by me, and I shall have the right to maintain and keep said house on the land it is now located during my lifetime." The deed also contained a general warranty of title.

Instead of being situated on Lot 5 as represented, the dwelling house referred to in the quoted portion of the deed was then actually situated, and thereafter remained, altogether on Lot 7.

The second of the deeds introduced by the plaintiff is the deed the defendant claims is void because she neither signed nor acknowledged it. It is, as aforesaid, a deed from Carmelo Lombardo to Roy C. Lombardo, dated May 20, 1946. It purports to convey to the grantee all of the grantor's "right, title and interest in and to" all of Lots 5 and 6 in Block 3 of the Flowers Addition, and contains a general warranty of title. Among the recitations of the deed, is the following: "The above described property being vacant lots, and constitute no part of my homestead, my home now being located on Lot No. Seven (7) in said Block No. Three (3) of said addition." The recited consideration for the deed was $10 in cash and the grantee's agreement to pay all taxes due on the grantor's part of Lots 5 and 6 as well as Lot 7 in Block 3 of the Flowers Addition. Evidence was introduced to prove that at the time the deed

was executed a tax suit was pending against the owners of said lots, and that all of the delinquent taxes then due on the three lots were paid by the grantee, Roy C. Lombardo.

The third deed introduced by the plaintiff is one from Roy Lombardo, Phillip Lombardo, James Fumuso, Albert John Fumuso, and Bertha Fumuso Lombardo and husband, Joe Lombardo, to Rosalie Marino, the plaintiff in this suit. This deed, which bears date of August 19, 1946, purports to convey to the grantee the lots in controversy, Lots 5 and 6. The deed contains a general warranty of title. The recited consideration for the conveyance was $1,200 in cash, and evidence was introduced to show that this sum of money was in fact paid for the lots, and that it was a fair price for them.

The cross-defendant Adam Gurski introduced in evidence a deed which the plaintiff, Rosalie Marino, executed and delivered to him under date of April 6, 1953. This deed, which contains only a special warranty of title, purports to convey to the said Gurski the land in controversy, Lots 5 and 6. The evidence shows a consideration of $1,500 to have been paid for the conveyance.

Evidence was then introduced which shows without dispute the following facts: Carmelo Lombardo, who, as between the plaintiff and the defendant, was the agreed common source of title, was married three times. There were born as issue of his first marriage six children; viz., Marie, Annie, Sam, Tom (who died in 1938), Frank, and Roy. His second marriage, which occurred about the year 1908, was to a widow, Josephine Fumuso, who herself had three living children by her previous marriage; viz., James Fumuso, Frank Fumuso (who was dead when the case was tried, but the record is silent as to when he died), and Bertha Fumuso, who married Joe Lombardo. There was born as issue of this second marriage one son, Philip Lombardo. The third marriage was to the defendant, Carrie Lombardo, and took place on or about May 3, 1943. No issue was born of this last marriage. Except for one

brief period, Carmelo Lombardo and his second wife, Josephine, lived in the house on Lot 7 from about the year 1920 until the wife's death in 1940 or 1941. They procured the house to be built. After the death of his second wife, Carmelo Lombardo continued to live in the same house until he married the defendant, and then he and the latter lived in it together until perhaps September of 1947, when he was placed in a nursing home, where he remained until his death on March 23, 1952. The defendant, Carrie Lombardo, continued to live in the house on Lot 7, both after her husband was placed in the hospital and after his death, and was still living in it at the time the case was tried.

The plaintiff tendered evidence to show that the lots in controversy were community property of Carmelo Lombardo and his second wife, Josephine, but, except for the limited purpose of showing Carmelo Lombardo's intent (in just what respect is not made clear by the record), this evidence was excluded on the defendant's objection that the agreed common source of title could not be gone behind. The tendered evidence consisted of a general warranty deed from Union Macaroni Company to Carmelo Lombardo, dated February 20, 1936, of a general warranty deed from Frank Fumuso and wife, Josephine, to Carmelo Lombardo, dated June 30, 1939, and of the probate proceedings whereby the community estate of Carmelo Lombardo and his second wife was administered. Each of these deeds purported to convey all of Lots 5, 6, and 7 in Block 3 of the Flowers Addition, and said lots were inventoried by Carmelo Lombardo as a part of the community estate of himself and his deceased second wife.

The defendant made no contention that the property in controversy belonged to the community estate of herself and Carmelo Lombardo. She admitted that none of it was acquired after they were married.

The evidence is sharply conflicting with reference to whether Lots 5 and 6 were used by Carmelo Lombardo and the defendant in connection with Lot 7, on which their

dwelling was situated, for the purposes of a home and in such manner as to constitute them a part of their homestead. The evidence introduced by the plaintiff is to the effect that Lots 5 and 6 were all along vacant, unimproved lots, and that absolutely no use was made of either of them by Carmelo Lombardo and his family, either during or between any of his marriages. On the other hand, evidence introduced by the defendant is to the effect that from the time of her marriage in 1943 until after 1946 a small building which was used for storage purposes stood on Lot 6, a duck pen was maintained on one or the other or both of the lots, fig, pear and mulberry trees, the fruits of which were used by the family, were situated on both lots, the family clothes line was stretched across the lots, vegetables were raised in season on Lot 5, the family's chickens and ducks ranged on the lots, the grandchildren played on them, and that, in general, without distinction as to their boundaries, Lots 5 and 6, together with Lot 7, were used by the defendant and her husband as a part of their home and homestead. Commencing in about the year 1948 and continuing down to the date of trial, the defendant maintained on Lots 5 and 6 small portable houses which she rented from month to month as a means of gaining a livelihood.

The three lots, 5, 6 and 7, are parallel to one another, and are of equal size, each being 60 feet in width (east and west) and 110 feet in length. Lot 7 is the most westerly of the three, is adjoined by Lot 6, and the latter is in turn adjoined by Lot 5. The house on Lot 7 faces south, and, according to the evidence, is situated nearer the lot's west than its east line.

We deduce from the record as a whole that the judgment of the trial court was the result of the following process of reasoning: The deed by which Carmelo Lombardo, while unmarried, conveyed to Roy C. Lombardo an undivided one-half interest in Lots 6 and 7, this being the deed bearing date of February 3, 1943, together with the deed bearing date of August 19, 1946, by which Roy C. Lombardo, et al, ostensibly conveyed to the plaintiff, Rosalie

Marino, all of Lots 5 and 6, was considered to have vested in the plaintiff title to an undivided one-half interest in Lot 6, this being the title awarded her by the judgment. The deed which Carmelo Lombardo executed and delivered while married to the defendant, the deed of May 20, 1946, by which he undertook to convey all of his right, title and interest in Lots 5 and 6 to Roy C. Lombardo, was treated as being absolutely void and as having conveyed no right or interest in either lot because it represented an attempt by the husband, without joinder of the wife, to convey a part of the marital homestead. The agreement of the plaintiff and the defendant upon Carmelo Lombardo as the common source of title was held to preclude a showing that the land in controversy was community property of Carmelo Lombardo and his second wife; and, therefore, despite proof of the second wife's death, the deed of the second wife's children to the plaintiff was held unavailing as proof of title deraigned through the second wife and her children from the agreed common source. The defendant's homestead rights in the premises were held to entitle her to the exclusive possession of both lots in their entirety.

■ The jury's finding that on May 20, 1946, the land in controversy was a part of the homestead of Carmelo Lombardo and the defendant is, we think, supported by the evidence. See: Hancock v. Morgan, 17 Tex. 582; Gulf, B. & G. N. Ry. Co. v. Lewis, Tex.Civ.App., 85 S.W. 817, error refused; Seidemann v. New Braunfels State Bank, Tex.Civ.App., 75 S.W.2d 167, error refused. Therefore, on the record as it stands, the deed of that date by which Carmelo Lombardo, without the joinder of his wife, undertook to convey all of his right, title and interest in Lots 5 and 6 to his son, Roy C. Lombardo, was wholly inoperative, and during continuation of defendant's homestead rights in the premises cannot of itself become operative (by estoppel or otherwise), to convey to the said Roy C. Lombardo or his vendees any right, title or interest in the premises. Stallings v. Hullum, 89 Tex. 431, 35 S.W. 2; Colonial & U. S. Mortgage Co. v. Thet-

ford, 27 Tex.Civ.App. 152, 66 S.W. 103, error refused; Martin v. Astin, Tex.Com. App., 295 S.W. 584; Cates v. Greene, Tex. Civ.App., 114 S.W.2d 592, 595; Hair v. Wood, 58 Tex. 77. It follows that such title as Carmelo Lombardo held to the premises at the time he made the aforesaid deed remained in him until his death, and thereupon, absent any showing that he died testate, passed under the laws of descent and distribution to his heirs, subject to the defendant's homestead rights and to said deed insofar as, in changed circumstances, it might subsequently become operative.

■ The right of the defendant under her claim of homestead to use and occupy the premises extends to only such interest as her husband owned in them at the time of his death. If her husband owned less than the whole, but by virtue of homestead rights which accrued to him under a previous marriage was nevertheless entitled during his lifetime to use and occupy the lots in their entirety, it does not follow that at his death the defendant herself succeeded to the same rights. On the contrary, at his death, the outstanding interests were unburdened, the lots became subject to be partitioned, and the owners of the outstanding interests became entitled to have their part of the property set aside to them for their own use, benefit and enjoyment. Gilliam v. Null, 58 Tex. 298; Pressley's Heirs v. Robinson, 57 Tex. 453; Richmond v. Sims, Tex.Civ.App., 144 S.W. 1142; Murphey v. Murphey, Tex.Civ.App., 131 S.W.2d 158; 22 Tex.Jur. 351, sec. 242.

The foregoing conclusions make readily apparent the materiality of determining whether the lots were or were not a part of the community estate of Carmelo Lombardo and his second wife, Josephine. However, the judgment of the trial court has rendered the question of even more importance in this instance than might ordinarily be true. If the lots were in fact community property of the second marriage, the plaintiff acquired title under the deed of August 19, 1946, to a substantial undivided interest in them by purchase from three of the heirs of the second wife, and the trial court's judgment divested her of this title and vested it in the defendant, a stranger to it.

It was the latter consideration in particular that prompted us to order the case rebriefed by appellant Rosalie Marino. It was questionable as to whether her brief on original submission contained a point assigning as error the exclusion of the evidence she tendered to prove that the lots in controversy were community property of Carmelo Lombardo and his second wife. She had merely adopted the brief of appellant Gurski, and had not herself assigned any independent points of error. The Gurski brief contained points complaining of the exclusion of the evidence, but the points were framed as if Gurski himself had tendered the evidence, when in reality he had neither tendered it nor joined in the plaintiff's tender of it. Therefore, by adopting Gurski's brief, including his points, appellant Marino was herself apparently complaining of the trial court's refusal to permit Gurski to introduce the excluded evidence; and the trial court had ruled on no such tender.

In her new or supplemental brief, appellant Marino has brought forward a point in which she complains of the trial court's refusal to permit her to introduce the evidence which is under discussion. However, she represents that the point is germane to, or is predicated upon, a particular assignment of error appearing in appellant Gurski's motion for new trial. The assignment to which reference is made is itself framed as if Gurski instead of the plaintiff had tendered the excluded evidence. Therefore, notwithstanding the fact that appellant Marino adopted Gurski's motion for new trial as her own in the trial court, if her point on appeal had no other support in the record than the assignment to which our attention has been directed, it would perhaps still not entitle us to pass upon the ruling of the trial court which she seeks to have reviewed. However, an examination of the record has disclosed that in her own motion for new trial the plaintiff, in addition to adopting the motion of Gurski, independently assigned

error as follows: "The trial court erred in overruling the offer of the plaintiff to introduce into evidence the prior record title of the land involved in this suit, prior to the investment of title in the common source, because such prior record was offered for the purpose of showing that Carmelo Lombardo, the common source, did not claim the land involved in this suit as a homestead and also in contradiction to the evidence given by the defendant, Carrie Lombardo." In the circumstances of the particular case, we construe this assignment of error as being sufficient to direct the trial court's attention to the matter complained of, and to call for a review of the ruling which excluded the evidence in question.

 We think the refusal by the trial court to permit plaintiff to introduce the evidence which she tendered to prove that the lots in controversy were community property of Carmelo Lombardo and his second wife was reversible error. It is not permissible, it is true, for either party to question the validity of any link in the chain of title between the common source and the sovereignty of the soil when a common source of title has been agreed upon. However, that rule did not preclude a showing by plaintiff that the lots, the legal title to which was held in the name of Carmelo Lombardo, were in fact community property of Carmelo Lombardo and his second wife, and that the second wife, under whom the plaintiff claims, owned an undivided one-half interest in them. Taylor v. Doom, 43 Tex.Civ.App. 59, 95 S.W. 4; Fairmont Creamery Co. v. Minter, Tex.Civ.App., 274 S.W. 281, error refused. Such a showing, a showing of for whose benefit the legal title was held, did not constitute an attack upon the validity of any link in the chain of title between Carmelo Lombardo and the sovereignty of the soil.

Since the permanent injunction which was granted against the appellant Gurski has its basis in the portion of the judgment adjudicating title, and the judgment in that respect must be reversed, the portion of the judgment granting injunctive relief must also be reversed. Accordingly, appellants' twelfth point, to the extent only that it complains of such portion of the judgment, and not for the reasons assigned in it, is sustained. All other of appellant Gurski's points are overruled. Also, all other of appellant Marino's points except such of them as complain of the refusal to permit her to introduce the evidence above discussed are overruled.

For the error pointed out, the judgment of the trial court is reversed and the cause is remanded for a new trial. Upon the basis of this substituted opinion, appellee's motion for rehearing is overruled.