A. ACHILLES AND WIFE V. P. J. WILLIS & BRO.

No. 7819.

1. **Homestead — Residence.** — The head of a family is not entitled to two residence homesteads. He is entitled to one, which may consist of two or more detached lots. The nucleus must be the lot on which the dwelling is situate. This lot will draw to it such others as may be conveniently near to it and may be used in connection with it for the comfort and convenience of the family.

2. **Same—Fact Case.**—The plaintiffs (appellants) established a residence in block 19, lot 12, of city of Austin, as homestead. They failed to show that the lot in question, situate three or four blocks distant, had ever been used in connection with it for home purposes. See facts.

APPEAL from Travis. Tried below before Hon. Wm. M. Key. The opinion states the case.

*John R. Peel*, for appellants. — 1. The Lavaca Street property was used by appellants in connection with and as a part of said lot No. 12, block 19, for the purpose of a home, and the court should have found as a conclusion of fact that the Lavaca Street property was exempt therewith from forced sale and not subject to be sold under the levy made under the judgment of P. J. Willis & Bro. Rev. Stats., art. 2336; Blum v. Whitworth, 66 Texas, 351; Wynn v. Hudson, 66 Texas, 7; Inge & Boring v. Cain, 65 Texas, 81; Miller v. Menke, 56 Texas, 562; Wright v. Straub, 64 Texas, 65; Hargadene v. Whitfield, 71 Texas, 489; Axer and Wife v. Bassett, 63 Texas, 547.

2. The court found as a conclusion of fact and of law that lot No. 12, block No. 19, was the homestead of appellants and not subject to forced sale under execution of appellees P. J. Willis & Bro., and as a fact that the Lavaca Street property had been used in connection with their actual residence on said lot No. 12, block No. 19, to stable their horses and cows, and for some other purposes incidental to a residence homestead, and did not find that they had abandoned the use of it for the purposes of a home. Shepherd v. Cassiday, 20 Texas, 28; Gouhenant

v. Cockrell, 20 Texas, 96; Cross v. Everts, 28 Texas, 533; Thomas v. Williams, 50 Texas, 273.

*R. C. Walker*, for appellees.—1. In order to make a detached lot a part of the residence homestead it must be actually used in connection with and as a part of the residence homestead, and to use it in connection with rented property other than the actual residence homestead does not make it a part of the homestead. Const. 1876, art. 16, sec. 51; Rev. Stats., art. 2336; Arto v. Maydale, 54 Texas, 244; Andrews v. Hagadon, 54 Texas, 571; Brooks v. Chatham, 57 Texas, 31, 34; Axer v. Bassett, 63 Texas, 545, 548; Thomp. on Home. and Ex., sec. 100.

2. A lot detached from the residence in order to be protected as a business homestead must be actually used as a place of business, and the exemption can only be kept up by the continued use thereof, and an intention to use it at some future time does not protect it as a place of business. Miller v. Menke, 56 Texas, 539; Shyrock v. Latimer, 57 Texas, 674; McDonald v. Campbell, 57 Texas, 614; Willis v. Morris, 66 Texas, 634.

GAINES, Associate Justice.—This action was brought by appellants to restrain the appellees from selling two lots or parcels of land in the city of Austin under execution. The plaintiffs claimed that the lots constituted their homestead and that therefore they were exempt from forced sale. On one of the parcels, known as lot 12, in block 19, was situated a dwelling house, and the other, called the Lavaca Street property, was distant some three or four blocks from the other and had upon it a butcher's shop and a part of a stable. The injunction was dissolved as to the latter, but was perpetuated as to the former lot. The appellees have not assigned errors, and therefore the sole question before us is whether or not the court erred in holding the Lavaca Street lot subject to forced sale.

The plaintiff Andreas Achilles testified that he bought lot 12, in block 19, as a residence for his family in 1886, and that they moved upon the lot and made their home there for some three or four months; that he then leased the property and made his family residence in the second story of a house rented by him and used as a place of business, but that he never intended to abandon lot 12 as his homestead. He also testified that in 1887 he bought the Lavaca Street lot, which was on the opposite side of the street from his business house. He also testified "that he used this property as a woodyard till he failed in December, 1887; that in January, 1888, his brother A. H. Achilles bought the stock of goods from his trustee and ran the business, including the wood business, up to March 31, 1890—till after the levy; that during that time he clerked for his brother and had no interest in the business; * * * that the Lavaca Street lot has a stable on it, half of the stable being on

his lot and the other half on the adjoining lot; that the middle of the stable is his line, and that the stable runs back east seventy-six feet; that the stable is about thirty feet wide; that there is a bed room in the corner of the stable on his part about eight feet square; that there is a butcher shop on the southwest corner of his lot about 20½ by 14½ feet, and a shed room to it 14½ by 8 feet; that the shop and shed room buildings do not belong to him; that they belong to August Hoecke, and were there when he bought the property and were rented, and that since he bought he has rented the ground covered by them and received ground rent $5 up to about January 1, 1890, and that since that time Hoecke has occupied it but paid him no rent but a little meat; that he was using the stable for his cow and horses and wagon and feed at the time he failed, and has used it ever since in some way; that the stalls in which he keeps his horses and cow are on the north side of the stable on the other lot, and the bins where he keeps his feed are on the south side and on his lot, and the bed room is on the south side; that all the lot except the part covered by the stable and shop and shed is what has been used for a woodyard." He also testified "that he bought this lot for the purpose of using the same in connection with his homestead on lot 12, in block 19, and that since he purchased it he has been keeping his horses and cow therein with feed for them, and his firewood, chickens, etc., and used the lot as a yard to wash the family clothing." No other witness testified with reference to this matter.

It may be doubted whether the testimony discloses such use of the lot as would entitle it to be exempt from forced sale. A part was rented, and the open space seems to have been mainly used as a place to deposit wood kept in connection with plaintiffs' business. But conceding for the sake of the argument that such use was shown, does it follow that it would not be subject to sale under execution? The head of a family is not entitled to two residence homesteads. He is entitled to one, which may consist of two or more detached lots. The nucleus must be the lot on which the dwelling is situated. This lot will draw to it such others as may be conveniently near to it and may be used in connection with it for the comfort and convenience of the family. The plaintiffs established in this case that lot 12 was their homestead proper. They failed to show that the lot in question had ever been used in connection with it for home purposes. The court below held that under these circumstances it had never become a part of the homestead, and we are not prepared to say that this conclusion was not correct.

The judgment is therefore affirmed.

*Affirmed.*

Delivered May 22, 1891.