## SEIDEMANN et ux. v. NEW BRAUNFELS STATE BANK et al.

### No. 8002.

Court of Civil Appeals of Texas. Austin.
Oct. 10, 1934.

Rehearing Denied Oct. 24, 1934.

Schleyer & Luckett and F. B. Voight, all of New Braunfels, for appellants.

J. R. Fuchs, of New Braunfels, for appellees.

BLAIR, Justice.

Appellants, Adolph Seidemann and wife, Alvina Seidemann, sued appellees, New Braunfels State Bank and the Guaranty State Bank, to cancel a deed of trust executed by them January 19, 1931, on lots 12 and 14, block 48 of the Guenther addition to New Braunfels, to secure the payment of their note of even date for $1,750, payable seven months after date, alleging that the property was the separate property of Mrs. Seidemann, and the homestead of the Seidemanns at the time the deed of trust was executed. Appellees denied the homestead claim, and pleaded estoppel to assert such claim; and by way of cross-action appellee Guaranty State Bank, who purchased the note in question after maturity, sought judgment for a balance of $1,250 due on the note and to foreclose the deed of trust lien. The jury found that appellants were not actually using lots 12 and 14 in controversy in connection with and as a part of their homestead on the date they executed the deed of trust. Judgment was accordingly rendered against Adolph Seidemann for $1,250, with interest, and against both the husband and wife for foreclosure of the deed of trust lien; hence this appeal.

We have reached the conclusion that the claim of homestead was established as a matter of law.

In 1921 Mrs. Seidemann purchased lot 13 in block 48. A house, garage, and other improvements were on it. In June, 1924, the Seidemanns began to use said lot 13 as their home. Afterwards they found that lot 12 on one side and lot 14 on the other side of lot 13 were low and did not drain, causing water to stand and become stagnant, and causing weeds and vegetation to grow, cutting off the breeze, and rendering such premises unsanitary. In October, 1924, Mrs. Seidemann purchased lots 12 and 14, and appel-

168

lants caused them to be filled to a level with lot 13, sodded them with Bermuda grass, and the three contiguous lots thereafter formed one big yard, without any line of demarcation between them. Pecan and fruit trees were thereafter planted on all the lots. A cement sidewalk in front of lot 13 was extended along lots 12 and 14, and later a curb was built, and the street paving was paid for by appellants in front of the three lots. The three lots thus improved have constituted one continuous and contiguous well-kept yard, and appellants have used them in connection with their home, living in the house on lot 13, using one adjacent lot to back their automobile over, and for a resting place under the shade of the trees, and using the lawn on the other lot for playing croquet, and stringing lights over the entire yard for lawn parties; using them for beautification of the home and for pecan and fruit trees for family use, if they bear. The bank's employees who negotiated the loan and secured the execution of the deed of trust testified that they knew that the Seidemanns had occupied, and were occupying, the house as their home; that, upon the lots being offered as security, they drove by the premises and saw the one, continuous, and contiguous well-kept yard, the pecan and fruit trees thereon; and further testified that there was no line of demarcation between the lots; and that they did not know what uses appellants made of the premises. The uses of the lots above detailed were open and visible to everyone, and the testimony of such uses of the lots in connection with the house and other improvements from October, 1924, to the date of the execution of the deed of trust, and even since, was not contradicted in any manner. The deed of trust was executed to secure a pre-existing debt of Adolph Seidemann; the employees of the bank telling him that the bank examiners were requiring them to secure the debt, which they refused to extend payment of unless the security was given. The deed of trust contained the statement that the lots were not appellants' homestead, and were not used in connection with their homestead, and the deed of trust designated lot 13 as homestead. The agents of the bank testified that Adolph Seidemann also told them that the lots were not homestead; and Seidemann himself drew the deed of trust.

The law is settled that lots used in connection with the urban home for mere convenience to the enjoyment of the homestead, or for pleasure, or for beautification or ornamentation of the same, or for garden or orchard purposes used in connection with the home, are entitled to homestead protection, if it is a fact that they have been so used. Arto v. Maydole, 54 Tex. 244; Medlenka v. Downing, 59 Tex. 32; Achilles v. Willis, 81 Tex. 169, 16 S. W. 746; Anderson v. Sessions, 93 Tex. 279, 51 S. W. 874, 55 S. W. 1133, 77 Am. St. Rep. 873. The above-detailed facts are undisputed, and show that from 1924 until the execution of the deed of trust the lots in suit were so used by appellants. Since this is true, the lots were a part of the homestead, and no valid lien could be given on them.

The law is also settled that, where property is actually occupied by the husband and wife for the purpose of a home so as to make it homestead in law, no disclaimer or renunciation thereof and no representation to the contrary, however made, will be permitted to change the homestead character of the property nor work an estoppel to assert the homestead claim.

Nunn in his work, Texas Homestead and Other Exemptions, § 35, p. 94, succinctly stated the rule as follows: "After the homestead of a family, having a husband and wife as members thereof, has been actually dedicated by actual occupancy, and while so occupied, there can be no forfeiture of exemption by a disclaimer, or renunciation thereof; for no declaration or renunciation, no matter how solemnly made, will be permitted to change the character of the property or destroy the exemption in the case of actual occupancy."

Speer in his Law of Marital Rights (3d Ed.) § 497, p. 613, says: "Where property is actually occupied for the purpose of a home so as to make it such in law, no representations to the contrary, however made, can work an estoppel."

In 22 Tex. Jur. § 125, pp. 180, 181, the rule is stated in detail with quotation from court decisions, as follows:

"If the homestead claimant is shown to have been occupying the premises in circumstances sustaining the claim of homestead, he is entitled to prevail over one who has dealt with the property, notwithstanding any statement, declaration or representations, whether verbal or written and whether incorporated in the deed of trust or other instrument. In the language of the opinions,

"'It seems to be well settled that where a married man is in actual possession of property, using the same as a home or as a business homestead, no representations made, either by him or his wife, will defeat the constitutional exemption.'

" 'Our courts have uniformly held that where a person is actually in possession of a piece of property, occupying and using same as a homestead, at the time a mortgage or lien is attempted to be placed thereon, an affidavit or a statement made by the parties contrary thereto is of no binding force or effect, since the Constitution of this State (Art. 16, Sec. 50) forbids the fixing on the homestead of a lien other than those that are expressly permitted under the terms of the Constitution.' "

The following authorities fully support the above quotations of the text-writers, and sustain our conclusions herein: Black v. Boyer (Tex. Civ. App.) 21 S.W.(2d) 1094; Blanton v. Alexander (Tex. Civ. App.) 298 S. W. 308; Carstens v. Landrum (Tex. Civ. App.) 5 S.W. (2d) 208; Equitable Mortg. Co. v. Norton, 71 Tex. 683, 10 S. W. 301; Farmers' State Bank v. Farmer (Tex. Civ. App.) 157 S. W. 283; Freeman v. Hamblin, 1 Tex. Civ. App. 157, 21 S. W. 1019; Hawes v. Parrish, 16 Tex. Civ. App. 497, 41 S. W. 132; Hutchenrider v. Smith (Tex. Com. App.) 242 S. W. 204; Jacobs v. Hawkins, 63 Tex. 1; Kempner v. Comer, 73 Tex. 196, 11 S. W. 194; Knowles v. Waddell Inv. Co. (Tex. Civ. App.) 280 S. W. 885; Phillips v. Tex. Loan Co., 26 Tex. Civ. App. 505, 63 S. W. 1080; Radford v. Lyon, 65 Tex. 471; Tex. Land & Loan Co. v. Blalock, 76 Tex. 85, 13 S. W. 12; Wilson v. Levy (Tex. Civ. App.) 13 S.W.(2d) 971; Wootton v. Jones (Tex. Civ. App.) 286 S. W. 680; Gibraltar Savings & Building Ass'n (Tex. Civ. App.) 41 S.W.(2d) 130 (writ of error refused).

Briefly summarized, we hold that, since the undisputed evidence showed that prior to and at the time of the execution of the deed of trust the property in question (lots 12 and 14) was openly and visibly used in connection with and for the purpose of appellants' home so as to make it homestead in law, the deed of trust was null and void; and that, since the property was actually and visibly occupied by the husband and wife for the purpose of a home at the time the deed of trust was executed, "no representations to the contrary, however made, can work an estoppel" to assert the homestead claim.

Other attacks are made upon the note and deed of trust lien as affecting Mrs. Seidemann; but, since we are holding the lien invalid because of the homestead claim, there is no need to discuss these questions, and, in accordance with our foregoing conclusions, the judgment against Adolph Seidemann for the balance due on the note is affirmed, and the judgment foreclosing the deed of trust is reversed, and judgment is rendered denying a foreclosure of such deed of trust lien.

Affirmed in part, and in part reversed and rendered.

### On Motion for Rehearing.

On motion for rehearing appellees insist that this court has no authority to reverse and render with regard to the question of homestead, because it is claimed that only Adolph Seidemann, an interested party, testified as to the use of the lots in connection with the homestead. But such is not the record, as was pointed out in our original opinion. Adolph Seidemann did testify to certain uses of the lots in connection with the homestead, and others testified as to some of such uses. But we did not ground our opinion upon such testimony alone, but upon the testimony of appellee bank's officers who negotiated the loan and secured the deed of trust, and who testified that, when the property was offered as security, they suggested that it was homestead, which Seidemann denied; and that they then went out and looked over the premises, and saw the open, visible, and plain uses of the property as detailed in our original opinion. The visible uses testified to by the bank's officers have been uniformly held to be sufficient to impress the property with the homestead character. The bank's officers also testified that they had known for many years that the Seidemanns had occupied and used the premises in the condition they saw them. So it is manifest that the long-continued occupancy and use of the property by the Seidemanns was open, notorious, and visible to everyone, and this undisputed evidence brings the case clearly within the rule stated in our original opinion, that "where property is actually occupied for the purpose of a home so as to make it such in law, no representations to the contrary, however made, can work an estoppel." And, since the bank's officers actually saw and testified to such open and visible uses of the property, and knew of its actual occupancy by the Seidemanns for many years prior to the taking of the deed of trust, no possible issue of estoppel could arise in their behalf under the rule just stated.

Overruled.