# Supreme Court of Texas

No. 22-0485

Bexar Appraisal District,

*Petitioner*,

v.

Yvondia Johnson,

*Respondent*

On Petition for Review from the
Court of Appeals for the Fourth District of Texas

JUSTICE YOUNG, joined by Justice Blacklock, dissenting.

For the first time in Texas history, the Court departs from the deeply embedded legal principle that "[t]here cannot be one homestead for the wife and another for the husband, for the law protects but one to the entire family." *Marler v. Handy*, 31 S.W. 636, 639 (Tex. 1895) (quoting *Slavin v. Wheeler*, 61 Tex. 654, 659 (1884)). The Court instead concludes that a married couple can have two residence homesteads and claim a tax exemption for both. This historic jurisprudential development faces two substantial obstacles:

- the settled legal meaning of what a homestead *is*, which without exception has always included a one-per-couple limit, and

- the settled rule that tax exemptions require unmistakably clear statutory authorization, where any doubt leads to rejecting a claimed exemption.

In my view, the Court clears neither hurdle, much less both.

The first should be dispositive. The one-per-couple limit inheres in the very meaning of a "homestead." It is part of what a homestead *is*. A married couple can no more have a second homestead than an only child can have a younger sister. This couple already has a homestead in San Antonio, so they may not have another one in Converse. Nothing in the constitutional text or the statute we consider today remotely seeks to displace this traditional meaning or is at all inconsistent with it.

So the Court should not even reach the second hurdle—that courts must cast a jaundiced eye on tax-exemption claims. It does, though, and correctly *recites* that an exemption may be sustained only if the law authorizes it with the utmost clarity and that *any doubt* about the scope of the text requires rejecting a claimed exemption. *See ante* at 4. The statute does not expressly prohibit a married couple from having two or more residence homesteads—but silence about such an ancient principle cannot clearly overcome that principle. The opposite is true: until the legislature *expressly* provides for a first-time-ever rule expanding tax exemptions, we must conclude that the legislature has done no such thing.

Today's result is surely sympathetic. I do not begrudge the Johnsons an extra homestead exemption. I am grateful for their service to our country. But extending tax benefits even to highly favored groups is beyond judicial authority. The Court tries to downplay the effect of its decision, but it is no good to bulldoze objective legal constraints in *this* case and then not expect courts to do so in future cases. Until the

2

legislature or the People act with clarity to change existing law, I feel bound to apply that law. I would thus reaffirm that a married couple may have only one residence homestead and that any tax exemption must be pellucidly clear. I must respectfully dissent.

**I**

At issue is whether the Johnsons may claim a "residence homestead" tax exemption for one of their homes despite also claiming such an exemption for another. Mrs. Johnson currently lives in Converse while Mr. Johnson, her husband, lives in San Antonio. The Court's references to "*her* principal residence, a home in Converse, Texas" and "*his* principal residence, a home in San Antonio," *ante* at 1–2 (emphasis added), perhaps make today's result seem less troubling. But make no mistake, both homes are *the couple's*. *Both* are the Johnsons' community property. Both exemptions belong to and will benefit the couple.

So no, they cannot claim a residence-homestead tax exemption on two homes because no matter how many homes they own (or that either one of them owns), a married couple can have only one homestead. That understanding is part of the very meaning of a "homestead." This conclusion follows, in greater detail, from these four points, which I will address in turn:

    (a)    the "one per couple" limit is deeply embedded in the meaning of "homestead," a term of art in Texas jurisprudence;

    (b)    that limit prominently features in our cases construing Article XVI of our Constitution, which protects homesteads from forced sales, but it applies wherever the term is used—including in Article VIII, which provides for residence-homestead tax exemptions;

3

(c)     nothing about the disabled-veteran homestead exemption departs from or is inconsistent with the settled meaning; and

(d)     the Court's contrary construction should *at the least* be rejected because of the constitutional-avoidance doctrine.

## A

The word "homestead" as used in Texas law has forever imparted the one-per-married-couple limit. *See Marler*, 31 S.W. at 639. It appears both before our Constitution of 1876's ratification, *see Holliman v. Smith*, 39 Tex. 357, 362 (1873) ("There cannot be protected by law two homesteads for the same family, one for the husband and one for the wife. The law protects but one, and that one is the homestead dedicated as such by the head of the family."), and after its ratification, *see Slavin*, 61 Tex. at 659 ("There cannot be one homestead for the wife and another for the husband, for the law protects but one to the entire family."). This limit is just part of what it means for something to be a homestead.

Given how basic the principle is and how unanimous the understanding of it has been, the only remarkable thing is how many opportunities courts have found to mention it—all through the nineteenth century, the twentieth century, and now well into the twenty-first. Our state courts have repeated it,[1] and so have federal courts applying Texas

---

[1] *See, e.g.*, *Salomon v. Lesay*, 369 S.W.3d 540, 555 (Tex. App.—Houston [1st Dist.] 2012, no pet.) ("[A] family is not entitled to two homesteads at the same time." (citing *Silvers v. Welch*, 91 S.W.2d 686, 687 (Tex. [Comm'n Op.] 1936), and *Achilles v. Willis*, 16 S.W. 746, 746 (Tex. 1891))); *Ramsey v. Davis*, 261 S.W.3d 811, 817 (Tex. App.—Dallas 2008, pet. denied) ("A party cannot have two homesteads at the same time." (citing *Silvers*, 91 S.W.2d at 687)); *McKee v. Wilson*, 174 S.W.3d 842, 844 (Tex. App.—Waco 2005, no pet.) (citing Tex. Const. art. XVI, § 51, *Silvers*, 91 S.W.2d at 687, and *Achilles*, 16 S.W. at 746); *Kendall*

4

law.[2] The Court does not identify even *one* case in which a married couple successfully claimed or benefitted from more than one "homestead" or "residence homestead" for tax-exemption purposes (or any other purpose). It does not identify a single case in which such a result is contemplated as possible. Even Mrs. Johnson's counsel acknowledged, properly, that this will be the first such case *ever*.

Nothing in the law has changed to permit the more expansive definition the Court engrafts. The law has grown more generous in various ways, of course. One prominent example, as I describe below, is that since 1973 single adults (that is, unmarried adults who do not head a household) are no longer forbidden from having homesteads. But that generous expansion did not change the status of *married* adults, who are still part of a family; so even if the family gets a particularly wonderful exemption *because of* one "individual" family member, or even if more than one exemption might be allowed, a married couple still may have one and only one homestead. This age-old principle—that "[a]t no time has one family been entitled to more than one homestead," *Swearingen v.*

---

*Builders, Inc. v. Chesson*, 149 S.W.3d 796, 807 (Tex. App.—Austin 2004, pet. denied) (citing Tex. Const. art. XVI, § 51, and *Achilles*, 16 S.W. at 746).

[2] *See, e.g.*, *In re Thaw*, 620 F. App'x 304, 309 (5th Cir. 2015) ("A claimant may only have one homestead at any given time, even if the claimant owns multiple residences." (internal quotation marks omitted) (citing *Achilles*, 16 S.W. 746)); *In re Claflin*, 761 F.2d 1088, 1092 (5th Cir. 1985) ("[T]he wife cannot have one homestead and the husband another." (quoting *Crowder v. Union Nat'l Bank of Hous.*, 261 S.W. 375, 377 (Tex. [Comm'n Op.] 1924))); *In re Morgan*, 607 B.R. 880, 889 (Bankr. S.D. Tex. 2019) (citing *Crowder*, 261 S.W. at 377), *aff'd*, 848 F. App'x 629 (5th Cir. 2021); *In re Palmer*, 391 B.R. 386, 389 (Bankr. E.D. Tex. 2008) (citing *Crowder*, 261 S.W. 375); *In re Dawson*, 266 B.R. 355, 358 (Bankr. N.D. Tex. 2001) (citing *Crowder*, 261 S.W. 375); *In re Nerios*, 171 B.R. 224, 226 (Bankr. N.D. Tex. 1994) (citing *Achilles*, 16 S.W. 746).

*Bassett*, 65 Tex. 267, 271 (1886)—remains intact.

The principle is important. It is not only part of what "homestead" means, it reflects what marriage itself means. Treating a married couple as something materially different from merely two cohabiting *individuals* is core to our law. The Johnsons may choose to live in different houses if they wish, but they are a couple in the eyes of the law, and they may not claim an additional residence-homestead exemption at the Converse home.

## B

This core meaning of "homestead" has not changed and applies wherever the term is used. It is true that the attendant one-per-couple limit was repeatedly stated in cases construing the Article XVI homestead provisions. But the constitutional and statutory history reflect that, like the repeated use of any legal term of art, the meaning of "homestead" and its attendant limits apply equally in Article VIII. *Cf. Brown v. City of Houston*, 660 S.W.3d 749, 755 (Tex. 2023) ("Statutory history concerns *how the law changed*, which can help clarify *what the law means*."). To be clear, this case implicates not just statutory history but also constitutional history, because the Texas "homestead" is a constitutionally created legal interest—an estate in land—that vests in a single adult or (relevant here) a family. *See* Tex. Const. art. XVI, §§ 50–52.[3]

The Constitution of 1876 did not authorize "residence homestead"

---

[3] "The homestead interest is a legal interest created by the constitution that provides prophylactic protection from all but the three types of constitutionally permitted liens against homesteads." *Heggen v. Pemelton*, 836 S.W.2d 145, 148 (Tex. 1992). "The homestead right, when fixed, is an estate in land . . . ." *Cocke v. Conquest*, 35 S.W.2d 673, 678 (Tex. 1931). The "Texas homestead right is not a mere statutory entitlement, but a vested property right." *United States v. Rodgers*, 461 U.S. 677, 686 (1983).

6

tax exemptions in Article VIII, but the Constitution did contemplate "homestead" protection in Article XVI. Since ratification, Article XVI has protected homesteads from forced sale, *see* § 50, and prescribed how a husband's or wife's homestead interest descends in the event of the other's death, *see* § 52. Article XVI, § 51 of our Constitution "defines the homestead." *Woods v. Alvarado State Bank*, 19 S.W.2d 35, 37 (Tex. 1929).[4] In 1876, that section contemplated (as it does today) urban and rural homesteads:

> The homestead, not in a town or city, shall consist of not more than two hundred acres of land, which may be in one or more parcels, with the improvements thereon; the homestead in a city, town, or village, shall consist of lot, or lots, not to exceed in value five thousand dollars, at the time of their designation as the homestead, without reference to the value of any improvements thereon; *provided*, that the same shall be used for the purposes of a home, or as a place to exercise the calling or business of the head of a family . . . .

Tex. Const. art. XVI, § 51 (as originally adopted in the 1876 Constitution). The key words § 51 used (and still uses) to define the homestead appear in the proviso: "home," "calling or business," and "family."[5]

---

[4] We have repeatedly observed § 51's definitional role. *E.g.*, *Whiteman v. Burkey*, 282 S.W. 788, 788 (Tex. 1926) ("Section 51 defines and limits the homestead . . . ."); *Ford v. Aetna Ins. Co.*, 424 S.W.2d 612, 614 (Tex. 1968); *Autry v. Reasor*, 113 S.W. 748, 748 (Tex. 1908).

[5] There is question about whether the proviso applies to urban and rural homesteads, or just urban homesteads. *Compare* Angus S. McSwain, Jr., *The Texas Business Homestead in 1990*, 42 Baylor L. Rev. 657, 659 (1990) ("The business homestead is referred to only in defining the homestead in a 'city, town, or village.'"), *with Autry*, 113 S.W. at 748 ("In defining what shall constitute a homestead, section 51 of article 16 of the Constitution expressly provides that the rural homestead may be one or more parcels, but at the same time provides

The word "home" identified the core and most common purpose of homestead usage. "Before a homestead c[ould] be claimed upon land, it must be used for some one purpose of a home, either by cultivating it, using it directly for the purpose of raising family supplies, or for cutting firewood and such like." *Autry v. Reasor*, 113 S.W. 748, 748 (Tex. 1908). The "word 'home' is not necessarily synonymous with 'homestead,'" *see Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 160 (Tex. 2015), and the "acquiring of a new home is not always the acquiring of a new homestead," *Rancho Oil Co. v. Powell*, 175 S.W.2d 960, 963 (Tex. 1943).

The words "calling or business" provided another, although less common, homestead purpose. These words "embrace[d] every legitimate avocation in life by which an honest support for a family may be obtained." *See Shryock & Rowland v. Latimer*, 57 Tex. 674, 677 (1882).[6] While § 51 contemplated two types of homestead usage, it never recognized "*two* homesteads, but *one* homestead, a part of which may be used for the business of the head of the family." *Rock Island Plow Co. v.*

'that the same shall be used for the purposes of a home, or as a place to exercise the calling or business of the head of a family.'"). In any event, the proviso's key words illuminate the meaning of "homestead."

[6] The words "calling or business" were a new feature in the Constitution of 1876. "Early Texas constitutions and statutes, beginning in 1839, made provision for a *residence* homestead but made no provision for a *business* homestead." *See* McSwain, *supra* note 5, at 657 (emphasis added). The Constitution of 1876 added "two distinctly new features." *Inge v. Cain*, 65 Tex. 75, 78 (1885) (discussing the Constitutions of 1845, 1866, 1869, and 1876). One was "the protection of the place of business of the head of the family, the unprotected condition of which had then been recently declared in *Iken & Co. v. Olenick*." *Id.* at 78–79 (referencing *Herman Iken & Co. v. Olenick*, 42 Tex. 195 (1874)). The 1876 Constitution's definition of "homestead" distinctly "embrace[d] the family residence or home as well as a place of business of the head of the family." *Rock Island Plow Co. v. Alten*, 116 S.W. 1144, 1145 (Tex. 1909).

*Alten*, 116 S.W. 1144, 1145 (Tex. 1909) (emphasis added).[7]

In 1876—and until 1973—*only* a "family" could have a homestead. The Constitution did not define "family" in Article XVI, but as this Court explained almost immediately after ratification, "the framers of that instrument had in view a family composed of husband, wife, and children, for whose protection, in the enjoyment of their homestead, they intended to provide." *Howard v. Marshall*, 48 Tex. 471, 477 (1878); *see also Woods*, 19 S.W.2d at 36 (explaining that the "homestead is to be regarded as an estate created not only for the protection of the family as a whole, but for the units of the family"). Our decisions construing the term homestead unsurprisingly discerned a one-per-couple limit. "As long as the relation of husband and wife exists, [one spouse] cannot acquire a homestead different from that of [the other spouse]. They are constituent members of the same family." *Crowder v. Union Nat'l Bank of Hous.*, 261 S.W. 375, 377 (Tex. [Comm'n Op.] 1924); *see also Silvers v. Welch*, 91 S.W.2d 686, 687 (Tex. [Comm'n Op.] 1936) (citing § 51's definition for the proposition that a "family is not entitled to two homesteads at the same time").

Long before Article VIII provided tax exemptions for "residence homesteads," we recognized this one-per-couple limit as fully applicable

---

[7] We must understand the Court's discussion of *Herman Iken*, an 1874 case, in this context. *See ante* at 5, 14–15. *Herman Iken* construed the term "homestead" as limited by our *prior* Constitution—a limitation that is irrelevant to the one-per-couple limit. While the term "homestead" still "conveys the idea of a house and place connected therewith," *id.* at 15 (quoting *Herman Iken*, 42 Tex. at 201), beginning in 1876 that term also conveyed the idea of a homestead being used for business purposes. *Herman Iken* is not inconsistent with the one-per-couple limit, and in any event, we have discredited that case because it construed the prior version of our charter. *See Inge*, 65 Tex. at 79 ("The new features in the constitution of 1876 . . . aptly reverse the holding in *Iken & Co. v. Olenick . . . .*").

to them:

> There could not be two places of residence for the family, separate and in no manner used together, and it must be held that the home in fact existing at the time the assignment was made was the only property which the appellees could claim as the *residence homestead*.

*Archibald v. Jacobs*, 6 S.W. 177, 179 (Tex. 1887) (emphasis added). The "head of a family is not entitled to two *residence homesteads*." *Achilles v. Willis*, 16 S.W. 746, 746 (Tex. 1891) (emphasis added).[8] The phrase "residence homestead" was not a novelty estranged from any other homestead. If anything, it distinguished homesteads being used for "home" purposes rather than "business" ones. "[W]hile the business homestead is ordinarily part of the residence homestead, a business homestead may exist without a residence homestead." *Lewis v. Morrison Supply Co.*, 231 F.2d 632, 634 (5th Cir. 1956) (citing 22 Tex. Jur., Homestead, § 192). However it was used to support a family, there could be but *one* homestead—urban or rural, residence, business, or residence-plus-business.[9]

---

[8] Lower courts similarly recognized the limit as applicable to "residence homesteads" long before that well-understood term was enshrined in the Constitution. *See, e.g.*, *Evans v. Galbraith-Foxworth Lumber Co.*, 51 S.W.2d 831, 833 (Tex. Civ. App.—Amarillo 1932, writ dism'd w.o.j.) ("[A] family cannot have more than one residence homestead at one and the same time." (quoting *Grimes v. Cline*, 300 S.W. 235, 236 (Tex. Civ. App.—Texarkana 1927, writ dism'd))); *Grimes*, 300 S.W. at 236 ("It is settled law in this state . . . [t]hat a family cannot have more than one residence homestead at one and the same time."); *Allen v. Whitaker*, 27 S.W. 507, 508 (Tex. Civ. App.—Dallas 1894, no writ) ("A party cannot hold two residence homesteads at one and the same time.").

[9] A single homestead was always contemplated, so even if a "business and residence [could] be on separate lots," they were still "taken together and constitute[d] only one homestead." *O'Neil v. Mack Trucks, Inc.*, 542 S.W.2d 112,

The legislature was thus not writing on a blank slate when, in 1948, it proposed and the People adopted the first "residence homestead" tax exemption to be housed in Article VIII, § 1-b—nor was it when (much later, in 2007) the People adopted the amendment authorizing a 100% disabled-veteran exemption.[10]  Here is the first one the People approved:

> Three Thousand Dollars ($3,000) of the assessed taxable value of all residence homesteads *as now defined by law* shall be exempt from all taxation for all State purposes.

Tex. Const. art. VIII, § 1-b (as originally adopted in 1948) (emphasis added).  The phrase "as now defined by law" expressly referenced and imported existing Article XVI jurisprudence regarding the contours of the

114 (Tex. 1976), *mandate recalled and reissued*, 551 S.W.2d 32 (Tex. 1977). Historically, a family could also have its "business homestead" on a lot not contiguous to the residence but still have the land constitute the homestead.  *See* Tex. Const. art. XVI, § 51 (as originally adopted in the 1876 Constitution); *Aetna Ins. Co.*, 424 S.W.2d at 616 (analyzing § 51's reference to "lot, or lots" and holding "that the business homestead exemption may extend to two non-contiguous lots when such lots are used as a place for the operation of the business of the head of a family, and both are essential to and necessary for such business").

This changed in 1999.  A constitutional amendment inserted the word "contiguous" into § 51, thus barring a homestead from spanning non-contiguous lots.  *See* Christopher John Kern, *Goodbye Texas Urban Business Homestead: An Analysis of the November 1999 Amendment to Article XVI, Section 51 of the Texas Constitution*, 52 Baylor L. Rev. 663, 673 (2000) ("As a result of the 1999 amendment, the separate business is no longer considered homestead property.").  Even so, § 51 still uses the words "home" and "calling or business," meaning the distinction between the two types of homestead usage remains. *See* Joseph W. McKnight, *Family Law: Husband and Wife*, 59 SMU L. Rev. 1307, 1326 (2006) ("Disputes with respect to a business homestead are very uncommon because the configuration of a business homestead contiguous to a residential homestead is now unusual." (referencing the 1999 amendment)).

[10] The Court observes that the first Article VIII residence-homestead tax exemption was adopted in 1932 in the separate § 1-a.  *See ante* at 6.  Had the disabled-veteran exemption been placed in § 1-a, my analysis would remain the same.

11

"homestead" into Article VIII's "residence homestead" tax exemption. The one-per-couple limit is part of what was imported—it would have occurred to no one that using *the same term of art* and expressly borrowing *existing legal meaning* would have meant anything less.

The Court acknowledges this as "[q]uite plausibl[e]." *See ante* at 7. It is, in fact, conclusive. Absent some contrary indication—something that makes it impossible to maintain the one-per-couple limit—every residence-*homestead* tax exemption the legislature proposed for Article VIII (and any *other* use of "homestead") would import Article XVI's one-per-couple limit. When the legislature "borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word." *United States v. Hansen*, 599 U.S. 762, 774 (2023) (quoting *Morissette v. United States*, 342 U.S. 246, 263 (1952)). "We presume the Legislature enacted the statute 'with complete knowledge of the existing law and with reference to it.'" *In re Bridgestone Ams. Tire Operations, LLC*, 459 S.W.3d 565, 572 (Tex. 2015) (quoting *Acker v. Tex. Water Comm'n,* 790 S.W.2d 299, 301 (Tex. 1990)); *see also, e.g., McBride v. Clayton*, 166 S.W.2d 125, 128 (Tex. [Comm'n Op.] 1942) (stating that statutes should "be construed in connection and in harmony with the existing law, and as a part of a general and uniform system of jurisprudence, and their meaning and effect is to be determined in connection" with, among other things, "the constitution" and "the decisions of the courts" (quotation omitted)).

Put differently, when a legal term like homestead is "obviously transplanted from another legal source," here, Article XVI, "it brings the

12

old soil with it." *See* Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527, 537 (1947). Among the soil, or cluster of ideas, associated with the constitutional term "homestead" from before 1876, past 1948's adoption of the first tax-exemption amendment and subsequent statutes, and through the enactment of the current disabled-veteran amendment and statute in 2007, was this: a husband cannot have a homestead separate from his wife, and vice versa.

If the legislature and the People wished to depart from the rule authorizing only one homestead per couple, they very easily could have avoided the term "homestead" in creating Article VIII tax exemptions. They could have, for example, called these exemptions "residence" tax exemptions, "residence home" tax exemptions, "principal residence" tax exemptions, or given it any myriad of names. Or the legislature and the People could have kept the "homestead" term but affirmatively and expressly eliminated its one-per-couple limit from our homestead jurisprudence (or from *part* of it).

Such options are not implausible—the People *have* expressly abandoned a settled meaning in this context. But it was not the one-per-couple limit. Instead, it had to do with the idea of a homestead for an individual. As this Court said in 1878, the "leading idea in the Constitution, in reference to the homestead exemption, was doubtless to secure to such persons as constitute a family, *in contradistinction to single persons*, a home, and to foster and upbuild the family interests, upon which, mainly, society depends." *Whitehead v. Nickelson*, 48 Tex. 517, 522 (1878) (emphasis added). That principle was also core to the meaning of a homestead until 1973, when "the Legislature proposed, and the voters

13

adopted, amendments to the Texas Constitution which allowed either a family *or* 'a single adult person' to have a homestead." *See* Angus S. McSwain, Jr., *The Texas Business Homestead in 1990*, 42 Baylor L. Rev. 657, 658–59 (1990) (emphasis added); *see also Laster v. First Huntsville Props. Co.*, 826 S.W.2d 125, 136 (Tex. 1991) (Gammage, J., dissenting) ("Since the voters adopted the constitutional amendment November 6, 1973, single adults, including divorced persons, have had constitutional homestead rights.").[11]

This amendment clearly changed a settled meaning—the proper way to do so if the People want that result. But the *only* meaning that the People changed was to expand homestead access to *single* adults. Married adults like Mrs. Johnson and Mr. Johnson are not single adults.

---

[11] The 1973 amendments manifested in both Article XVI and Article VIII (which, as an aside, confirms my understanding that the homesteads referenced in both articles are the same—why else simultaneously amend Article VIII if the Article XVI homestead limits did not apply to it?). What follows below is the amendatory language to Article VIII, § 1-b (which by then had two tax exemptions):

> (a) Three Thousand Dollars ($3,000) of the assessed taxable value of all residence homesteads <u>of married or unmarried adults, male or female, including those living alone,</u> ~~as now defined by law~~ shall be exempt from all taxation for all State purposes.

> (b) From and after January 1, 1973, the governing body of any county, city, town, school district, or other political subdivision of the State may exempt by its own action not less than Three Thousand Dollars ($3,000) of the assessed value of residence homesteads of <u>married or unmarried</u> persons sixty-five (65) years of age or older<u>, including those living alone,</u> from all ad valorem taxes thereafter levied by the political subdivision. . . .

Tex. S.J. Res. 13, § 2, 63d Leg., R.S., 1973 Tex. Gen. Laws 2469, 2469 (amending Tex. Const. art. VIII, § 1-b). Striking "as now defined by law" and inserting the underlined language meant that single adults who were not part of a family could—for the first time—claim a homestead interest. *See ante* at 7.

14

Nothing in the amendment changed that truism. Nor did anything suggest that Texans could have more than one homestead or residence homestead, whether as a married couple or as a single adult. As accurately put by a contemporaneous analysis, which the Court also cites, "Texas cases have made it clear that there may be only one homestead per family, and *the new exemption does not change this limitation.*" Lynda Beck Fenwick, Note, *Effects of Extending the Homestead Exemption to Single Adults*, 26 Baylor L. Rev. 658, 665–67 (1974) (emphasis added). Quite so. Without exception, Texas courts and federal courts applying Texas law have continued to invoke the one-per-couple understanding long after 1973. *See supra* notes 1–2.

The one-per-couple limit presumptively endures across Article XVI and Article VIII until the People change it. It is part of the homestead's legal meaning as a Texas term of art.

## C

As such, the one-per-couple limit continues to "operate as [a] background assumption[] baked into the law" of the term homestead. *See Am. Nat'l Ins. Co. v. Arce*, 672 S.W.3d 347, 366 (Young, J., concurring). Operating in the assumption's foreground for this case is the 2007 Article VIII, § 1-b amendment authorizing exemptions for disabled veterans:

> (i) The legislature by general law may exempt from ad valorem taxation all or part of the market value of the residence *homestead* of a disabled veteran who is certified as having a service-connected disability with a disability rating of 100 percent or totally disabled and may provide additional eligibility requirements for the exemption. . . .

Tex. Const. art. VIII, § 1-b(i) (as originally adopted in 2007) (emphasis added). Two years later, the legislature enacted this exemption using

15

substantially similar language:

> (a) In this section:
>
> . . . .
>
>> (2) "Residence *homestead*" has the meaning assigned by Section 11.13.
>
> . . . .
>
> (b) A disabled veteran who has been awarded by the United States Department of Veterans Affairs or its successor 100 percent disability compensation due to a service-connected disability and a rating of 100 percent disabled or of individual unemployability is entitled to an exemption from taxation of the total appraised value of the veteran's residence *homestead*.

Tex. Tax Code § 11.131(a)(2), (b) (emphasis added).

Nothing in the above constitutional or statutory text affirmatively eliminates from the term "residence *homestead*" the principle that a couple may have only one homestead (the background assumption). Construing the term homestead in accordance with its historical legal meaning should lead the Court to conclude that the Johnsons cannot have two.

Yet the Court believes the provisions quoted above, *sub silentio*, entitle Mrs. Johnson (and Mr. Johnson) to *two* residence homesteads. The Court thinks Mrs. Johnson is entitled to a residence-homestead tax exemption for the Converse home, where she lives, *and* one for the San Antonio home, where her husband lives. (Again, Mrs. Johnson necessarily benefits from both exemptions because she and Mr. Johnson are married and the homes are their community property.) According to the Court, "[n]either section 11.131(b) of the Tax Code nor Article VIII, Section 1-b(i) includes such a one-per-family limitation" because the

16

statute (and the amendment) "plainly states the exemption is awarded not to a family, a married couple, or a single adult but, simply, to a 'disabled veteran,' the individual, without limitation." *Ante* at 16–17.

But there is no need for an additional expressed "limitation" because the one-per-couple limit already inheres in the word "homestead." Disabled veterans *are individuals*—it is hardly surprising that an exemption for disabled veterans would be phrased as going to, well, disabled veterans. Tethering a disabled-veteran exemption to someone being a disabled veteran hardly means that the traditional one-per-couple limit has disappeared. In addition to being individuals, veterans also are either married or single. A 100% disabled veteran who is married brings the generous exemption with him or her to his or her family.

This unusual case involves *both* spouses being 100% disabled veterans. *Either one* could obtain the exemption for the homestead; the fact that both could qualify does not change that they are married. Likewise, *any* married couple consists of two individual human beings, either of whom *could* obtain a homestead exemption if single. But as a married couple, they may have only one residence homestead. Not one single word in the constitutional or statutory provisions at issue requires dispensing with these settled principles.

Unable to find any express departure from the one-per-couple limit in the operative constitutional and statutory provisions, the Court turns to two subsections within § 11.13, a different provision of the Tax Code: the residence homestead definition in § 11.13(j) and language codified in § 11.13(h). Neither provides the clear departure the Court needs to rule in Mrs. Johnson's favor.

17

**1**

The Court's primary argument is that a statutory definition of "residence homestead" eliminated the one-per-couple limit. *See ante* at 7–9. Here is how the Court proceeds. It identifies a separate constitutional amendment that, in 1978, conceived of a third residence-homestead tax exemption, and in doing so, provided that the "legislature by general law may define residence homestead for purposes of this section." *See* Tex. H.J.R. Res. 1, § 3, 65th Leg., 2d C.S., 1978 Tex. Gen. Laws 54, 55–56 (amending Tex. Const. art. VIII, § 1-b by adding § 1-b(c)).[12] The legislature then codified the following definition:

> For purposes of this section:
>
> > (1) "Residence homestead" means a structure (including a mobile home) or a separately secured and occupied portion of a structure (together with the land, not to exceed 20 acres, and improvements used in the residential occupancy of the structure, if the structure and the land and improvements have identical ownership) that:
> >
> > > (A) is owned by one or more individuals, either directly or through a beneficial interest in a qualifying trust;
> > >
> > > (B) is designed or adapted for human residence;
> > >
> > > (C) is used as a residence; and
> > >
> > > (D) is occupied as the individual's principal residence by an owner, . . . .

Tex. Tax Code § 11.13(j).

---

[12] It is unclear whether this meant the legislature could define "residence homestead" only for § 1-b(c)'s purposes or for all of § 1-b, including the eventual disabled-veteran's exemption in § 1-b(i). Everyone seems to agree it could define the term for all purposes.

Observing that § 11.131(a)(2) incorporates the meaning of "residence homestead" from § 11.13, the Court emphasizes that "it is this statutory definition, not *Crowder* or other cases construing Article XVI, that defines 'residence homestead' for purposes of determining eligibility for a residence homestead tax exemption." *Ante* at 8. And because the "definition nowhere mentions a one-per-family or one-per-couple limitation," there is no problem if Mrs. Johnson claims the Converse home as her residence homestead. *Id.* at 17.

But wait: neither the constitutional definition of the broader term "homestead," Tex. Const. art XVI, § 51, nor the statutory definition of that term, *see* Tex. Prop. Code § 41.002, mentions a "one-per-couple limit," either. Yet it is undisputed that "homestead" imports the limit in *those* contexts. So how, then, do we avoid this consequence for the narrower term "residence homestead," given the same supposedly significant omission? The Court has no plausible answer for this.

The Court correctly observes that we are "bound to follow" statutory definitions. *See ante* at 4, 18. Of course—but to follow it, we must know what it means. "[W]hen seeking to understand statutory definitions, 'the word being defined is the most significant element of the definition's context.'" *In re Ford Motor Co.*, 442 S.W.3d 265, 271 (Tex. 2014) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 232 (2012)). "Statutory definitions must be interpreted in light of the ordinary meaning of the word being defined," and as a corollary, "[c]ourts should not consider the meaning of the term to be defined in total isolation from its common usage." *Id.*; *see also Miles v. Tex. Cent. R.R. & Infrastructure, Inc.*, 647 S.W.3d 613, 643 (Tex. 2022)

19

(Huddle, J., dissenting). "We presume that a definition of a common word accords with and does not conflict with the ordinary meaning unless the language clearly indicates otherwise." *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 135 (Tex. 2019) (quoting *Ford Motor Co.*, 442 S.W.3d at 271).

Nothing in the statutory definition "clearly indicates" a departure from the ordinary and settled understanding of what "homestead" means, including its attendant one-per-couple limit. The definition begins by specifying that a residence homestead must be "owned by one or more individuals." Tex. Tax Code § 11.13(j)(1)(A); *cf. Inwood N. Homeowners' Ass'n v. Harris*, 736 S.W.2d 632, 636 (Tex. 1987) ("A homestead may attach to an interest less than an unqualified fee simple title."). The definition then uses the word "residence" or "residential" four times in specifying that an eligible homestead must be designed, used, and adapted as (unsurprisingly) a residence. Tex. Tax Code § 11.13(j)(1).

But nowhere does the definition broaden or otherwise depart from the limits already inherent in the word "homestead," including the rule that a couple may have only one. The one-per-couple limit, therefore, presumably remains intact. *See Creative Oil & Gas*, 591 S.W.3d at 135. As *Miles* observed, reading definitions not to depart from settled meanings absent clarity constitutes "a presumption against 'counterintuitive definitions,'" such as "a statute defining the word dog to include all horses." 647 S.W.3d at 623–24 (majority opinion) (quoting and citing Scalia & Garner, *supra*, at 232 & n.29). Much the same here. Despite the definition not eliminating the one-per-couple limit, the Court construes the definition as entitling—for the first time in Texas jurisprudential

20

history—a married couple to two residence homesteads. The Court reaches this counterintuitive construction without acknowledging, much less applying, the presumption against such a result.

The Court instead treats the absence of a confirmation of the existing definition as a rejection, but this is mistaken. As Justice Robert Jackson put it, the "absence of contrary direction may be taken as satisfaction with widely accepted definitions, not as a departure from them." *Morissette*, 342 U.S. at 263. The definition on which the Court relies does nothing more than what the People authorized and expected— not for the legislature to redefine "homestead," but to define "residence homestead" for tax purposes.

Before this authorization, provisions like Article XVI, § 51 informed our understanding of the term's limits, *i.e.*, a residence homestead is used for the purposes of a home. *See Whiteman v. Burkey*, 282 S.W. 788, 788 (Tex. 1926) (linking "defin[ing]" with "limit[ing] the homestead" (citing Tex. Const. art. XVI, § 51)). The constitutional authority to define "residence homestead" sensibly delegates the details of what "residence" means to the legislature. How much land should count? How many buildings? How is the property to be used? What sort of ownership interest is entailed? Rather than send any change to these tedious details back to the People for yet another constitutional amendment, the People delegated them to the legislature. But nothing in this grant of authority means that the legislature must recodify every limit inherent in the concept of a "homestead"—nor did it necessarily

mean the legislature had free license to alter every existing limit.[13]

Doubling down on the statutory definition, the Court insists that the Article XVI cases "construing homestead protection in a different context (i.e., protection from forced sale) do not answer whether [Mrs.] Johnson qualifies for the Section 11.131(b) exemption." *Ante* at 18. I might agree *if* the Court could identify even one case involving Article VIII, Tax Code § 11.13, or Tax Code § 11.131 in which a married couple was permitted multiple residence homesteads. Failing this, the Article XVI cases tell us what "homestead" in "residence homestead" means. The Court still derides the one-per-couple rule as "a hidden, atextual limitation" in the context of Article VIII, *ante* at 14, but the rule is "hidden" in plain sight and is "atextual" only if the Court refuses to accept that it is part of the word "homestead" as used in our law since the beginning.

\* \* \*

To illustrate why I think the Court is so mistaken to treat "residence homesteads" as something totally separate from, rather than a species of, "homesteads," consider a hypothetical involving an all-too-rare treat: plum pie.

Imagine a fictional town called Plumville that was historically known for baking and consuming pies—think of Granny's homemade pies fresh out of the oven. Suppose that long ago the Plumville city council passed generous tax-exemption laws for businesses that sold a minimum quantity of plum pies. Eligible businesses claimed the exemption

---

[13] *See infra* Part I.D (describing how the Court's approach implicates constitutional questions regarding whether the "definitional" authority is unbounded, such that the legislature can call *anything* a "residence homestead," or if instead that authority is circumscribed to cover only property that plausibly can be characterized as a homestead and is used as a residence).

accordingly. And in the landmark case of *Mirabelle v. Prune*, which echoes throughout Plumville jurisprudence, the court pointedly observed that a "pie" is a "savored baked pastry consisting of a crust base and a sweet fruit filling; it is wholly and fundamentally distinct from donuts, ice cream, cookies, and the like."

That holding was made decades ago—but now, in the present, the city council has included the following definition to accompany the plum-pie exemptions: "For purposes of these exemptions, 'plum pie' shall mean a pastry (1) the primary fruit ingredient of which is plum and (2) said plums to be of the Victoria variety."

Businesses that made plum *donuts* have emerged seeking the plum-pie exemptions. They represent truthfully that they sell the minimum quantity of donuts, which are a pastry, and that their donuts are filled with only one fruit ingredient: delicious Victoria plums. Should these plum-donut businesses get the plum-pie exemption?

No, they would be plum out of luck. The settled understanding of "pie" was not displaced by the new tax-exemption definition, which *limits* rather than *expands* the plum pies that qualify. Plum donuts are out.

The Court's line of reasoning, though, would hold that donuts should qualify as pie. The law's definition of "plum pie," after all, does not expressly exclude donuts—so to the Court it would be "atextual" to do anything but include donuts. *Cf. ante* at 14. Similar to how the Court disregards the settled and historical understanding of the term "homestead" in "residence *homestead*," the Court would disregard the historical understanding of the term "pie" in "plum *pie*."

This approach would be mistaken. Just as the definition of "plum

23

pie" serves to distinguish plum pies from, say, pies with a bit of plum but a lot of apple, the "residence homestead" definition serves to distinguish residence homesteads from, for example, business homesteads (or any other homestead that is not going to be what the legislature determined would qualify for the tax exemption). Neither definition—of pie or homestead—alters or departs from the historical meaning of the foundational term. Rather, each definition adds limits to create an *even narrower* and *more precise* subsidiary.

Just as the court in *Mirabelle v. Prune* explained that pie is "wholly and fundamentally distinct from donuts," this Court has repeatedly explained that a married couple may have but one homestead. *See supra* Part I.A. The council in our fairy-tale city legislated against that backdrop, just as, here in the real world, the Texas legislature has legislated against the backdrop described in our cases. My whimsical example reflects a serious problem in the Court's analysis: its abandonment of settled meaning that already is *baked into* the meaning of "homestead."

**2**

The Court's secondary argument for overcoming the one-per-couple limit depends on *where* within the Tax Code the legislature codified the disabled-veteran exemption. *See ante* at 10–13, 20–22. It observes that § 11.13(h) applies a one-per-couple limit to tax exemptions codified in that section. *See* Tex. Tax Code § 11.13(h) (stating, among other things, that a "person may not receive an exemption under this section for more than one residence homestead in the same year"). It further observes that the legislature codified the disabled-veteran exemption in § 11.131, which does not contain a similar subsection (h).

24

We "must presume," says the Court, that this codification reflects "the Legislature's conscious choice to locate the disabled-veteran exemption outside Section 11.13 so that it would *not* be subject to the limitations in Section 11.13(h)." *Ante* at 21.

I find it strange that the Court will presume meaning from the legislature's codification-location choices but not from the legislature's decision to use the actual word "homestead" in authorizing residence-homestead tax exemptions. I do not disagree that codification can in some circumstances help elucidate legislative intent, *see, e.g.*, *Smith v. Doe*, 538 U.S. 84, 94 (2003) ("Other formal attributes of a legislative enactment, such as the manner of its codification . . . , are probative of the legislature's intent."), but it is never superior to the actual statutory text. Nor is it a tool that can show an otherwise-doubtful reading to be *free* of doubt—and in the *tax-exemption* context, the Court always has and still should require such clarity. *See also infra* Part II.

It seems fanciful to think that the legislature really codified § 11.131 separately from § 11.13 not for administrative ease but to escape § 11.13(h)—all for the secret and unstated goal of embracing an unprecedented situation where a married couple, consisting of at least one 100% disabled U.S. military veteran, chooses to live separately and claim separate residence homesteads for which they will collectively benefit under Texas law. If the legislature wanted to depart from the term of art's settled meaning, especially in the tax-exemption context, it would have just *said* so. The better explanation involves less clandestine intricacy than the Court attributes to the legislature: it simply distinguished the § 11.131 exemption from all others to highlight a very

25

different kind of tax exemption—an extraordinary (and well deserved) *total* tax exemption for a 100% disabled veteran.

The Court's codification rationale suffers from the same deficiency as the definitional one: neither relies on clear statutory or constitutional text eliminating the deeply embedded one-per-couple limit. An intended departure from such a settled meaning would surely be clear. But *at a minimum*, there is at least some doubt regarding these potentially competing intentions of the legislature's codification choice—and, as I reiterate in Part II, the presence of *any* doubt is fatal to a claim that a statute creates a tax exemption.

## D

The Court's mistaken understanding of *how* the legislature has defined and codified the residence-homestead exemptions is bad enough. But these mistakes rely on yet another dangerous premise—the assumption that the legislature *could* properly alter the one-per-couple limit without voter approval. Maybe the Constitution's grant of definitional authority goes that far, maybe not. The Court's view seems to be that the authority to define "residence homestead" is unbounded. My construction of the statutory text retains the traditional one-per-couple meaning. "This construction," unlike the Court's, "avoids the doubt which otherwise might arise as to the constitutional point, and therefore is to be adopted if reasonably possible." *United States v. Shreveport Grain & Elevator Co.*, 287 U.S. 77, 82 (1932). The Court's unbounded approach strikes me as, at the least, problematic. Choosing between the Court's interpretation and mine should therefore be easy. "[W]e should, if possible, interpret statutes in a manner to avoid constitutional

26

infirmities." *Osterberg v. Peca*, 12 S.W.3d 31, 51 (Tex. 2000). I therefore turn to this traditional constitutional-avoidance doctrine.

The problem is this: the Court reads the legislature's constitutional authorization to "define" the residence homestead and its separate power to codify exemptions for all their worth. Even if the Court were right that this authority means that all preexisting attributes of the word "homestead" disappear unless they are *restated* in a definition or in each codification of an exemption, can it be serious in thinking that the People gave the legislature *carte blanche* to effectuate fundamental changes to the term homestead?

If so, then I suppose that all the legislature has to do to exempt *anything* from taxation is to define it as a "residence homestead." A billion-dollar high-tech manufacturing facility—*residence homestead!* All the train tracks running across the state—*residence homestead!* A massive resort with a major conference center and a thousand guest rooms—*residence homestead!* All the intangible property of a corporation—*residence homestead!* An enormous plum inventory—*residence homestead!* And if the legislature wants families or single adults to have an infinite number of homesteads, then it could similarly adjust the statutory definition of "residence homestead," or at least codify the particular exemption separately from subsections like § 11.13(h). No wand in any fairy tale was as powerful as the one that the Court thinks the legislature was given through its power to "define" and codify residence-homestead exemptions.

These powers *might* be so unbounded—so unbounded, in fact, that the words "homestead" and "residence" cease to have any meaning.

27

"Residence homestead" would be a mere label, and the constitutional provision would not really authorize "residence *homestead*" exemptions—it would be a general tax-exemption provision in which the legislature could exempt *anything* so long as it took the odd step of labeling something that is neither a residence nor a homestead a "residence homestead." I suppose that is one reading of the definitional authority. But another is that it does what I described above, *see supra* at 21–22: it allows the legislature, within the broad zone of plausible *homesteads* that are used as *residences*, to define what features that will count for residence-homestead tax-exemption purposes. So maybe a 1,000-acre ranch *could* count as a homestead—but the legislature can exclude that ranch if it does not also serve as the claimant's residence. Or if 1,000 acres is too much to reasonably treat as a residence homestead (and our law indeed imposes narrower limits), it can limit the acreage to be so defined. Or if it wants to determine a maximum valuation that can be exempted, it could do so by statute without having to yet again amend the Constitution. That sort of "definition" is exactly what the constitutional text sensibly anticipates.

But if the Court *really* means that this incredible authority resides in the "definition" and codification-location power, then it has *resolved* a serious constitutional question (and probably gotten it wrong). If the Court is not prepared to go so far—if the Court would balk at allowing the legislature to wave the homestead wand at the examples I have given— then that must mean that there are *some* limits as to what a "residence homestead" can mean whether *or not* they are stated in a statutory "definition." And if there are *any* limits that survive without being

28

expressly stated in a statute, then I cannot see why the ancient one-per-couple limit is not one of them. It is at least a serious question.

Sticking with what we *know* the legislature has understood "homestead" to mean, in other words, properly avoids a much larger constitutional question. And if the Court's "definition" theory cannot allow it to dispense with the traditional one-per-couple limit, then it has no basis to do so other than its desire to get to today's result.

It would be better to do what we historically have done: rely on constitutional amendments to affect fundamental changes to our understanding of the term, such as the 1973 amendment allowing single adults to claim a homestead interest. *See supra* note 11. No amendment eliminates the one-per-couple limit. If the legislature thinks it can do so by mere statute, then fine—let it say so *clearly*. Then there is no constitutional question to avoid. If the People want to adopt such a change in the Constitution itself, then fine—let them say so *clearly*, and then there will be nothing to litigate.

The one thing we should not do is what the Court does: get ahead of the People and the legislature and do it ourselves. Avoiding serious constitutional issues maintains the proper boundary between the judiciary and the other branches. "[O]ne of the canon's chief justifications is that it allows courts to *avoid* the decision of constitutional questions. It is a tool for choosing between competing plausible interpretations of a statutory text, resting on the reasonable presumption that Congress did not intend the alternative which raises serious constitutional doubts." *Clark v. Martinez*, 543 U.S. 371, 381 (2005).

\* \* \*

The one-per-couple limit inherent in the disabled-veteran

29

residence-*homestead* exemption bars the Johnsons from obtaining (via Mrs. Johnson) the extra exemption as a matter of law.

## II

I do not see any remaining room for any married couple to claim two separate residence homesteads. But if there were any room left, it would be squeezed out by the standard of review that we are supposed to apply to any tax exemption: extreme doubt. I have invoked this principle in Part I and conclude with some brief remarks about it now—and particularly the consequences of dispensing with it.

The Court at least says the right things: "Statutory exemptions from taxation are subject to strict construction because they undermine equality and uniformity by placing a greater burden on some taxpaying businesses and individuals rather than placing the burden on all taxpayers equally." *Ante* at 4.[14] The exemption "must affirmatively appear," the "taxpayer has the burden to *clearly show* that an exemption applies, and *all doubts* are resolved *against* the granting of an exemption." *Id.* at 4 (emphasis added).

At *minimum*, the historic reading of "homestead" to exclude more than one per married couple creates textually based "doubt" about whether the legislature *actually* has allowed such a result. Under the very standards that the Court recites, we must therefore resolve the claim "against" the Johnsons, who seek the exemption.

---

[14] In the context of protection from forced sales, we also "construe homestead laws generously." *Norris v. Thomas*, 215 S.W.3d 851, 853 (Tex. 2007). Even in that non-tax-exemption context, that standard has never been successfully wielded against the one-per-couple limit. *See Whiteman*, 282 S.W. at 789 (stating "the courts cannot protect that which is not homestead").

Said differently, nothing in the Court's analysis rests on clear text departing from the settled understanding that a couple may have no more than one homestead. That understanding ought to remain until clearly revoked by the legislature. And nothing that the Court points to in the law is *necessarily* inconsistent or incompatible with that settled limit. Absent an unmistakable departure from the one-per-couple meaning, we should read the disabled-veteran exemption to conform to our ordinary understanding of Texas homestead jurisprudence. It is an understatement that there is some doubt about whether the law authorizes a double exemption for the Johnsons.

The problem with interpreting the statute as the Court does transcends today's case. It affects *all* tax legislation. The legislature and the People should be able to rely on this Court's repeated assurances that we will not find a tax exemption unless it is *completely* clear and there is *no* doubt. So whatever motivated the legislature's choices concerning codification or other matters of drafting the statute at issue here, the legislature at least should have been able to assure itself that it had not inadvertently created a new tax exemption. Whatever else a statute says, in other words, we have told the legislature that we would follow this stable background rule: the courts will wait for the legislature to be utterly unambiguous about tax exemptions before finding such exemptions.

This promise allows the legislature to do its job, but it is a promise that now has been broken. In the future, the legislature will have to invest new resources in *all* tax legislation—it will have to worry about hidden tax exemptions. There is no longer any assurance that this Court and lower courts will not conjure new exemptions from silence (like the

failure to textually reiterate what always existed and needs no reiteration) or from other sources that may be useful in general statutory interpretation but are not legitimate grounds to create tax exemptions (like the location of codification). If *this* statute clearly and unambiguously, free from all doubt, creates the first-in-history two-per-couple exemption, then the sky is the limit. The Court claims to follow the clear-and-unambiguous canon for tax exemptions, but it in fact discards it, and that seems like a pretty high price to pay.

\*   \*   \*

I am sorry that the Johnsons have formally separated. I have no desire that they divorce, which would allow each to have a homestead. May they instead remain married in happiness and in reconciliation. They may, of course, order their affairs as they wish, and I do not presume to advise them. As a separated couple, however, the Johnsons remain a *married* couple. "Limited divorces, a mensa et thoro ('from bed and board'), are unknown to the law of Texas." *Tanton v. State Nat'l Bank of El Paso*, 79 S.W.2d 833, 835 (Tex. 1935). Separated couples are entitled to one homestead like all other married couples. The Johnsons may not have another. The Court should reverse and render for this reason. Because the Court does not, I respectfully dissent.

Evan A. Young
Justice

**OPINION FILED:** June 7, 2024

32